[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 14 2000
THOMAS K. KAHN
CLERK

_____

Nos. 99-4223 & No. 99-4363

_____

D. C. Docket No. 93-08576-CV-JLK

ABBOTT LABORATORIES,

Plaintiff-Appellee,

versus

UNLIMITED BEVERAGES, INC.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(July 14, 2000)**

Before EDMONDSON, BARKETT and RONEY, Circuit Judges.

BARKETT, Circuit Judge:

Unlimited Beverages, Inc. and its successor Unico Holdings, Inc. ("UBI")

appeal from a final judgment in favor of Abbott Laboratories ("Abbott") imposing

sanctions against UBI after finding that it was in contempt for violating a final consent judgment entered in 1994.

## BACKGROUND

In 1992, UBI began to develop and sell an oral electrolyte maintenance solution called Naturalyte. At the time Abbott had its own electrolyte solution, known as Pedialyte, on the market.[1] Abbott sued UBI under 15 U.S.C. § 1125, alleging that the sale of UBI's electrolyte solution in a square bottle with a label that mimicked Abbot's product constituted trade dress infringement and sought injunctive relief. After the court granted a preliminary injunction, the parties entered into a settlement agreement and, based thereupon, the district court entered a consent judgment enjoining the sale, advertisement or promotion of Naturalyte in bottles or with labels confusingly similar to those used by Abbott for Pedialyte. Although UBI continues to sell Naturalyte as a retail product, its packaging is now significantly different from that of Pedialyte. However, in addition to its own retail sales, in 1998 UBI began supplying to Meijer, Inc. ("Meijer"), a mass-merchandising retailer, electrolyte solution in the identical bottles which had been

---

[1] Oral electrolyte maintenance solutions are given to infants and children suffering from diarrhea or vomiting in order to prevent dehydration.

the subject of the infringement action.[2]  When Abbott discovered the sales to

Meijer, it filed a motion for an order to show cause why UBI, as supplier to Meijer,

should not be held in contempt for violating the earlier consent judgment.

At the hearing on that motion, in addition to receiving evidence from both

parties, the magistrate judge considered UBI's stipulation to the following:

> (1) UBI provided the private-label retailers and Meijer with electrolyte
> solution packaged in "the same exact bottle" that UBI agreed not to
> use for the sale of Naturalyte, and

> (2) the electrolyte solution that UBI manufactures for the private-label
> retailers has the same chemical composition as Naturalyte.

The magistrate recommended that UBI be held in contempt and the district

court affirmed.  The magistrate recommended sanctions totaling $179,649.30,

comprising $109,499.30 in gross profits and $72,150.00 in attorneys' fees.  That

recommendation was adopted by the district court.  UBI now challenges both the

finding of contempt and the calculation of sanctions.

We review the district court's interpretation of the final consent judgment de novo.

Paradise v. Prescott, 767 F.2d 1514, 1525 (11th Cir. 1985).  We review the district

court's finding of contempt and the imposition of sanctions for abuse of discretion.

---

[2]Meijer sells over 1,800 products that are manufactured specifically for Meijer and labeled with the Meijer brand name in its 117 stores, all located in the Midwest.  In 1997, Meijer asked UBI to become its supplier of electrolyte solution.  In the following two years, three private-label retailers asked UBI to manufacture their electrolyte solutions.

Afro-American Patrolmen's League v. City of Atlanta, 817 F.2d 719, 723 (11th Cir. 1987).

**DISCUSSION**

**1. Did UBI Violate the Consent Judgment?**

The determination of whether a defendant violated a permanent injunction begins with a close examination of the judgment. King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2nd Cir. 1995). As we stated in American Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407 (11th Cir. 1998):

> [A] court must craft its orders so that those who seek to obey may know precisely what the court intends to forbid. . . . Thus, Rule 65(d) of the Federal Rules of Civil Procedure provides that "[e]very order granting an injunction ... shall be specific in terms; [and] shall describe in reasonable detail ... the act or acts sought to be restrained...." Fed. R. Civ. P. 65(d). Under this rule, "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed."

Id. at 1411 (quoting Hughey v. DMS Dev. Corp., 78 F.3d 1523, 1531 (11th Cir. 1996)). A district court may not expand the decree or impose obligations that are not unambiguously mandated by the decree itself. See United States v. Armour & Co., 402 U.S. 673, 681-82 (1971). However, the consent judgment is to be read in the light of the circumstances surrounding its formation "and any other documents expressly incorporated in the decree." United States v. ITT Continental Banking Co., 420 U.S. 223, 238 (1975).

4

In this case the preliminary injunction was incorporated by reference into the consent judgment, and the settlement agreement provided the contours upon which the permanent injunction was based. Thus, the district court correctly considered the totality of these documents to determine whether an ordinary person would be able to ascertain exactly what conduct the consent judgment proscribes.

On appeal UBI essentially argues that the consent judgment is exclusively limited to the sale of an electrolyte solution with the name "Naturalyte" and does not prohibit UBI from manufacturing or supplying private-label retailers with electrolyte solution in square bottles that those retailers sell under their own private labels in their own stores. UBI claims that, because the order did not specifically address whether it could manufacture or supply private-label retailers with electrolyte solution in a square bottle sold under the retailers' private labels, it is not in violation, and the district court erred in expanding the language of the consent judgment.

In the alternative, UBI argues that, since it did not violate the actual language of the consent judgment, it was entitled to fair warning before being sanctioned for violating the consent judgment. UBI urges that, for the purposes of contempt proceedings, any ambiguities in the consent judgment should be resolved in its favor. Hughes v. United States, 342 U.S. 353, 357-58 (1952); Ford v.

Kammerer, 450 F.2d 279, 280 (3rd Cir. 1971) (stating that an injunction must be obeyed only to the extent it reasonably specifies the conduct prohibited). UBI contends that, since the plain language of the consent judgment prohibits UBI from marketing Naturalyte electrolyte solution in square bottles and not Meijer electrolyte solution in square bottles, the consent judgment is not sufficiently clear and unambiguous to justify a finding of contempt.

We find no merit to these arguments. To focus exclusively on the word "Naturalyte" ignores everything else in the relevant documents and myopically distorts the common sense meaning of the documents in the context of the injunction proceedings. UBI does not dispute that the various electrolyte solutions that it is supplying to private-label retailers has the identical chemical composition as its own Naturalyte. It also does not dispute that the bottles in which it is packaging these products are identical to those that were the subject of the 1994 consent judgment. Finally, it cannot claim that it was unaware of the contents or context of the preliminary injunction or the settlement agreement. The same principal, Christopher Bohlman, acted for UBI at the time of the settlement agreement and entry of the consent judgment, as well as at the time of the condut that led to these contempt proceedings. In the settlement agreement UBI pledged that it would "not again use square-shaped bottles for an electrolyte solution. . . or

6

any other bottle and/or label confusingly similar to the square bottles and labels used for Abbott's Pedialyte solution." UBI cannot simply remove the "Naturalyte" name from the enjoined bottle and market the same solution in the same bottle through a private retailer in order to bypass the consent judgment.

A consent judgment need not recite every possible way in which a violation might occur when the proscribed conduct is readily ascertainable to an ordinary person. As Abbot notes in its brief, to accept UBI's position would lead to the absurd result that simply changing the spelling of "Naturalyte" would be sufficient to avoid the injunction. We conclude that the district court correctly interpreted the permanent injunction order and that UBI had fair warning from the consent judgment, the preliminary injunction incorporated by reference, and the settlement agreement it signed. UBI did precisely what it was proscribed from doing. The district court did not abuse its discretion when it found that UBI was in contempt.

**2. The District Court's Calculation of Contempt Sanctions**

UBI next argues that, in the light of their immediate compliance with the court's order and Abbott's failure to show that it had suffered any damages, the sanctions imposed were overly harsh and penal, amounting to an abuse of discretion. UBI further contends that the district court abused its discretion in awarding Abbott all of the attorneys' fees it claimed because UBI proved that some

part of those fees were incurred as part of Abbott's ongoing research related to any claims that it might have against private-label retailers.

Abbott need show no actual damage in this case, since the likelihood of confusion was already established in the 1994 consent judgment. In this case, the infringement was established in 1994, and the only issue is UBI's contempt of the consent judgment. Having found UBI in contempt, the district court has broad discretion to fashion an appropriate remedy. Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1519 (11th Cir. 1990). Notwithstanding that UBI failed to desist when Abbott initiated this suit for contempt sanctions, UBI argues that it should not be compelled to pay sanctions, because it complied with the consent judgment immediately upon learning of the the magistrate judge's determination that it was in contempt. However, a party's compliance with a consent judgment after being enjoined from continuing to violate it is no defense to the contempt charge itself. Sizzler Family Steak Houses v. Western Sizzlin Steak House, 793 F.2d 1529, 1535 n.5 (11th Cir. 1986).

Where a plaintiff's harm is difficult to calculate, the court may disgorge the party in contempt of any profits it may have received. Wesco Mfg. Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1487-88 (11th Cir. 1987). Disgorgement of profits is also the remedy under the Lanham Act, 15 U.S.C. §

1117(a) upon which Abbott's original complaint was based. The district court may award a defendant's profits to the plaintiff in proceedings involving injunctions arising from violations of the Lanham Act. Howard Johnson, 892 F.2d at 1519. However, UBI argues that the district court's calculation of its profits was deficient in failing to deduct costs from UBI's gross profits from the sale of the offending solutions. UBI claims that the appropriate measure of damage to Abbott, arrived at by deducting such costs, is $2,663. The district court refused to deduct those costs, concluding that they would have been incurred even without the sale of the prohibited product. We cannot say that this conclusion was an abuse of discretion.

As to attorneys fees, we note that attorneys' fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance. Richard V. Auto Publisher, Inc., 735 F.2d 450, 458 (11th Cir. 1984). UBI urges that the district court abused its discretion in awarding $72,150 because, since the facts relevant to this case were stipulated in advance, Abbott's attorneys could not possibly have devoted all the time they billed for this matter to litigation directed against UBI. UBI's argument, however, lacks any evidentiary basis. At the evidentiary hearing to assess damages, Abbott provided a detailed breakdown of how its attorneys billed their time in relation to this litigation. Some of that time was spent researching issues relevant to a possible

9

suit against Meijer, a suit it did not pursue once it discovered that UBI was Meijer's supplier. It is not an abuse of discretion to require that UBI pay for the cost to Abbott of UBI's attempt to conceal its identity.

For all the forgoing reasons, the decision of the district court is AFFIRMED.