[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11891

_____

D.C. Docket No. 14-cv-22650-RNS,
Bkcy No. 90-bkc-15999-AJC

In Re: OCEAN WARRIOR, INC.,

Debtor.

_____

JAMES E. GOWDY,

Plaintiff – Appellant,

versus

CHRISTOPHER MITCHELL,
JOEL TABAS, Trustee,
Chapter 7 Trustee of the Bankruptcy
Estate of Ocean Warrior, Inc.,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 26, 2016)

Before MARCUS, DUBINA and MELLOY,[*] Circuit Judges.

MELLOY, Circuit Judge:

This appeal arises from an order by the United States District Court for the Southern District of Florida, dated March 31, 2015. In that order, the district court affirmed eight rulings of the United States Bankruptcy Court for the Southern District of Florida. The bankruptcy court found, in part, that Appellant James Gowdy was liable for civil contempt. The bankruptcy court also imposed compensatory sanctions against Gowdy. Gowdy raises five issues on appeal. We affirm in most respects but reverse and remand for redetermination of the amount of the Trustee fee award.

I.

In June 1989, Appellee Mitchell, a commercial fisherman, sued two Florida corporations, Ocean Warrior, Inc. ("Ocean Warrior"), and Warrior Fleet, Inc., in the United States District Court for the Western District of Washington. He alleged the corporations failed to provide "basic maritime remedies of maintenance, cure and unearned wages" after he was injured while working aboard the corporations' commercial shrimping vessel, the F/V Janice. Mitchell also filed an *in rem* maritime claim against the F/V Janice, naming as its owner Ocean

---

[*] Honorable Michael J. Melloy, United State Circuit Judge for the Eighth Circuit, sitting by designation.

Warrior.  The United States District Court for the Western District of Washington had the F/V Janice arrested in admiralty.  On August 28, 1990, the district court in Washington ordered the *in rem* sale of the F/V Janice and the sale took place on the same day.

On the same day as the sale, Ocean Warrior filed a Chapter 11 Petition in the United States Bankruptcy Court for the Southern District of Florida.  The sale of the F/V Janice was voided.  The bankruptcy court determined there was substantial equity in the boat, over and above the amount claimed in Mitchell's lawsuit.  As a result, on May 9, 1991, the bankruptcy court ordered that Gowdy, the president of Ocean Warrior, be allowed to continue to operate the F/V Janice.  The bankruptcy court ordered that Gowdy maintain insurance on the boat.  The bankruptcy court also ordered the boat to remain in U.S. waters off the state of Washington pending the determination of Mitchell's maritime claim.  In April of 1992, the district court in Washington awarded Mitchell a judgment for his maritime claim.

Based on the Washington district court's judgment, the bankruptcy court in Florida ordered Ocean Warrior to deposit $38,000.00 into the court's registry as security for Mitchell.[1]  No money was deposited, insurance was not maintained on the F/V Janice, and the F/V Janice disappeared in August 1992.  When the boat

---

[1]  It is undisputed that the F/V Janice was worth far in excess of $38,000.00.  In fact, it was represented to the bankruptcy court that the boat was worth over $250,000.00, and an examiner later valued the boat at $225,000.00.

3

disappeared, Gowdy also disappeared. The bankruptcy court in Florida and the district court in Washington each issued warrants for Gowdy's arrest. The Washington warrant was for criminal contempt in connection with the suspected theft of the F/V Janice.

On February 10, 1993, with Ocean Warrior's only valuable asset missing and a bankruptcy reorganization no longer possible, the bankruptcy court converted Ocean Warrior's Chapter 11 case to a Chapter 7 case and appointed a Trustee. The case was closed and reopened several times over the years. Then, on December 2, 1999, the bankruptcy court closed the case with the condition that "[t]he court shall retain jurisdiction to reopen this case in the event the Vessel F/V Janice and/or Mr. James Gowdy are located. All existing Orders shall remain in full force and effect."

In June 2011, nearly twenty years after the F/V Janice and Gowdy disappeared, United States Marshals arrested Gowdy in Texas. At that time, he alleged that the F/V Janice had been stolen by a group of Colombians and that he had nothing to do with the theft. He also alleged that he came back into possession of the boat but subsequently lost it to creditors for liens. Gowdy was brought before the United States District Court for the Western District of Washington on the arrest warrant issued by that court. In September 2011, the Washington district

court released Gowdy on his own recognizance and deferred to the civil contempt proceedings in the United States Bankruptcy Court for the Southern District of Florida. On October 17, 2011, the bankruptcy court reopened the bankruptcy proceedings and entered an Order to Show Cause as to why Gowdy should not be held in civil contempt.

The bankruptcy court held a hearing on December 8, 2011, regarding its show cause order. Gowdy appeared *pro se* at the hearing. Gowdy initially indicated he thought he was being brought before the court on criminal contempt. However, the bankruptcy judge made it clear to Gowdy that the December 2011 hearing was for civil contempt only. According to the bankruptcy judge, Gowdy was not in danger of being incarcerated as a result of the hearing and the only issue was the location of the boat and damages owed to Mitchell if it could not be located. Gowdy refused to disclose the location of the F/V Janice or answer any questions about what had happened to the boat.

The court found Gowdy in civil contempt and ordered him to produce the F/V Janice or pay the amount due on Mitchell's judgment. On May 4, 2012, the bankruptcy court entered a written order finding Gowdy in civil contempt for violating "numerous" prior orders of the court, including provisions in orders dated February 9, 1991, and August 7, 1992. The May 4, 2012 order allowed Gowdy to

purge the civil contempt by either returning the F/V Janice or depositing funds into the court's registry to compensate Mitchell for damages caused by Gowdy's contempt. The court gave Gowdy 90 days to purge his contempt before other sanctions would be considered, such as incarceration until the contempt was purged.

On June 19, 2012, Gowdy filed an affidavit alleging he had no assets, seeking to avoid paying filing fees to appeal the bankruptcy court's civil contempt order. However, Gowdy's representations about his finances excluded reference to his interest in a pending maritime personal injury lawsuit in Texas. Gowdy's Texas lawsuit later settled for $449,637.22. Gowdy also excluded reference to his interest in a Texas home. Gowdy opined that the home was valued at $75,000.00 whereas Mitchell asserts on appeal that the home's publicly assessed value is approximately $120,000.00. On September 7, 2012, the Trustee commenced an adversary proceeding against Gowdy, seeking recovery for the conversion of the F/V Janice, turnover of the F/V Janice, and injunctive relief relating to the settlement funds due to Gowdy. Following interpleader proceedings, on May 29, 2013, the Trustee received $224,818.63 from the Texas court registry.

On July 17, 2013, the bankruptcy court entered an order awarding interim attorneys' fees and costs to the Trustee. On December 11, 2013, the bankruptcy

6

court entered an order temporarily staying the disbursement of funds to Mitchell pending the adversary proceeding's conclusion or final conclusion of any appeal of the July 17, 2013 order. On March 7, 2014, the bankruptcy court ordered sanctions against Gowdy for failing to purge his civil contempt. In that order, the bankruptcy court also approved the disbursement of funds to Mitchell and authorized the entry of a final judgment against Gowdy and in favor of the Trustee. On April 8, 2014, the bankruptcy court entered an amended final judgment in favor of the Trustee in the amount of $239,143.14. Gowdy filed his notice of appeal on April 16, 2014 and appealed the bankruptcy court's judgment. The district court affirmed the bankruptcy court's judgment. This appeal followed.

## II.

In a bankruptcy case, the Eleventh Circuit Court of Appeals "sits as a second court of review and thus examines independently the factual and legal determinations of the bankruptcy court and employs the same standards of review as the district court." In re Fisher Island Invs., Inc., 778 F.3d 1172, 1189 (11th Cir. 2015) (quoting In re Brown, 742 F.3d 1309, 1315 (11th Cir. 2014)). "Where the district court [sitting as an appellate court] affirms the bankruptcy court's order," the Eleventh Circuit "review[s] the bankruptcy court's decision." Id. In doing so, the court "review[s] the bankruptcy court's factual findings for clear error and its

7

legal conclusions *de novo*," id., and its imposition of sanctions for an abuse of discretion, In re Walker, 532 F.3d 1304, 1308 (11th Cir. 2008).  A lower court's decision to impose sanctions will be affirmed unless the court "made a clear error of judgment, or has applied the wrong legal standard."  In re Walker, 532 F.3d at 1308 (quoting Amlong & Amlong, P.A. v. Denny's Inc., 500 F.3d 1230, 1238 (11th Cir. 2007)).

## A.

Gowdy initially contends that the bankruptcy court abused its discretion by failing to conduct an evidentiary hearing on disputed issues of fact regarding his civil contempt.  Appellees counter that the bankruptcy court conducted an evidentiary show-cause hearing on December 8, 2011.  Having reviewed the record, it is clear that Gowdy received notice of the civil contempt allegations against him and that the bankruptcy court gave Gowdy the opportunity to testify, submit evidence, and rebut the allegations of civil contempt at his show-cause hearing.  Gowdy failed to disclose any information as to why he could not purge the civil contempt.  For these reasons, the bankruptcy court did not err in holding an evidentiary show-cause hearing, which satisfied due process requirements.  See F.T.C. v. Leshin, 719 F.3d 1227, 1235 (11th Cir. 2013) ("It is by now well-settled

8

law that due process is satisfied when a civil contempt defendant receives notice and an opportunity to be heard . . . .").

## B.

Gowdy next argues that his due process rights were violated when the bankruptcy court threatened incarceration for contempt and he lacked counsel at the show-cause hearing.  Appellees reply that the show-cause hearing met the due process requirements and that Gowdy was not entitled to counsel at his civil contempt hearing.  The United States Supreme Court has made clear Gowdy was not entitled to counsel at his civil contempt hearing because he faced no jeopardy of incarceration.  See Turner v. Rogers, 564 U.S. 431, 443 (2011) (interpreting prior Supreme Court cases as "pointing out that the Court previously had found a right to counsel '*only*' in cases involving incarceration, not that a right to counsel exists in *all* such cases . . . .").  As the district court noted in its May 31, 2015 order, at Gowdy's show-cause hearing the bankruptcy court stated: "[W]e're not going to incarcerate you . . . . This is a civil contempt motion here notwithstanding that you were arrested on the criminal contempt motion . . . ."  Thus, the

9

bankruptcy court did not violate Gowdy's due process rights by conducting a show-cause hearing on his civil contempt without appointing Gowdy an attorney.[2]

## C.

Gowdy contends that the bankruptcy court had no authority to punish him for contempt and that the bankruptcy court's sanction amounted to a criminal sanction. Appellees reply that the bankruptcy court had authority to impose civil contempt sanctions.

"Civil contempt power is inherent in bankruptcy courts since all courts have authority to enforce compliance with their lawful orders." Alderwoods Grp., Inc. v. Garcia, 682 F.3d 958, 967 n.18 (11th Cir. 2012) (citation omitted). Distinct from the bankruptcy courts' inherent contempt powers, 11 U.S.C. § 105 creates the bankruptcy courts' statutory civil contempt power. See 11 U.S.C. § 105(a) ("The

---

[2] The bankruptcy court did not indicate an intention to incarcerate Gowdy at the show-cause hearing or in the order calling for the hearing. The bankruptcy court's May 4, 2012 order, however, indicated the court would "consider the imposition of sanctions," including incarceration until the contempt was purged, if Gowdy did not purge the contempt within 90 days. Even if that order suggests Gowdy might in the future face the possibility of incarceration, the bankruptcy court met the due process requirements at Gowdy's show-cause hearing and eventually concluded Gowdy was not indigent on March 7, 2014. See Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C., 452 U.S. 18, 26–27 (1981) ("[T]he Court's precedents speak with one voice about what 'fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an *indigent litigant* has a right to appointed counsel only when, if he loses, *he may be deprived of his physical liberty*." (emphasis added)). Nowhere else in the record does the bankruptcy court mention incarceration. We need not consider whether Gowdy would have been entitled to counsel at a future hearing if the possibility of incarceration had actually arisen.

10

court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."). "Civil penalties must either be compensatory or designed to coerce compliance." In re Evergreen Sec., Ltd., 570 F.3d 1257, 1280 (11th Cir. 2009) (quoting In re Dyer, 322 F.3d 1178, 1192 (9th Cir. 2003)).

In this case, the bankruptcy court had subject matter jurisdiction to hold Gowdy, the president and agent of Ocean Warrior, liable for civil contempt. Gowdy did not comply with the bankruptcy court's orders in 1991 and 1992 because he failed to keep the F/V Janice in U.S. waters, failed to maintain insurance on it, and failed to deposit money into the registry of the court. At the show-cause hearing on December 8, 2011, the bankruptcy court determined Gowdy was in civil contempt and sought to coerce Gowdy to return the F/V Janice: "So the Court, based on what you have to say here, determines you are in civil contempt and directs that you have, let's say, 14 days to either deliver the boat or the amount due [Mitchell's] judgment." After Gowdy failed to purge his civil contempt, on March 7, 2014, the bankruptcy court imposed sanctions to compensate the aggrieved parties—Mitchell and others—for the costs incurred because of Gowdy's contempt.

11

Further, the sanctions were not punitive.  See In re McLean, 794 F.3d 1313, 1323 (11th Cir. 2015) ("Punitive sanctions . . . take the form of a fixed fine and have no practical purpose other than punishment; it is immaterial to a court imposing such sanctions that a contemnor might be fully in compliance with the order in question at the time the sanctions are imposed.").  Moreover, as the district court noted in affirming the bankruptcy court's orders, "The bankruptcy court never contemplated incarceration or punitive sanctions and it acted within its jurisdiction to find Gowdy in civil contempt."  Thus, the bankruptcy court did not err by imposing coercive and compensatory civil contempt sanctions.  See In re Evergreen Sec., Ltd., 570 F.3d at 1280; see also Leshin, 719 F.3d at 1234 (discussing the distinctions between coercive civil contempt sanctions and compensatory civil contempt sanctions).

## D.

Gowdy claims that the bankruptcy court lacked jurisdiction because the civil contempt proceeding was not a "core proceeding."  Relying on Stern v. Marshall, 564 U.S. 462 (2011), Gowdy argues that the bankruptcy court should have proposed a judgment instead of entering a final order.  Appellees disagree, arguing that the civil contempt proceedings relating to the F/V Janice and Gowdy's

12

violation of the bankruptcy court's orders are "core proceedings" over which the bankruptcy court has jurisdiction to enter a final order.

Bankruptcy courts may "enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.'" Stern, 564 U.S. at 474 (quoting 28 U.S.C. § 157(b)(1)). There are 16 different types of core proceedings set forth by section 157(b)(2), including, in relevant part, "matters concerning the administration of the estate" and "orders to turn over property of the estate." 28 U.S.C. § 157(b)(2)(A), (E). If a proceeding is "not a core proceeding but . . . is otherwise related to a case under title 11 . . . the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court." Id. § 157(c)(1).

Here, Gowdy violated the bankruptcy court's 1991 and 1992 orders involving the F/V Janice. As a result, following Gowdy's show-cause hearing, the bankruptcy court found Gowdy in civil contempt and ordered him to turn over the F/V Janice or pay damages. The court's orders concerned "the administration of the estate" and "turn[ing] over property of the estate." Therefore, the matters were "core proceedings" under the text of 28 U.S.C. § 157(b)(2). See 28 U.S.C. § 157(b)(2)(A), (E).

13

In addition, "[c]ivil contempt proceedings arising out of core matters are themselves core matters." In re Skinner, 917 F.2d 444, 448 (10th Cir. 1990); see In re White–Robinson, 777 F.3d 792, 795–96 (5th Cir. 2015) (per curiam) (noting post-Stern that a contempt order was a "core proceeding" because it was a "matter[ ] concerning the administration of the estate" pursuant to 28 U.S.C. § 157(b)(2) (alteration in original)). Thus, the bankruptcy court had subject matter jurisdiction over the allegations of civil contempt against Gowdy and the authority to enter a final order, not merely a proposed judgment, finding Gowdy in civil contempt. See In re Skinner, 917 F.2d at 448.

E.

i.

Lastly, Gowdy argues that the bankruptcy court erred in disbursing his money to pay the Trustee fees pursuant to the July 17, 2013 order. On appeal, Gowdy raises the same argument that he raised at the district court: he contends that, if sanctions were appropriate, fees should have been "paid out of the judgment, not fees awarded from [his] property first, and then a judgment entered on top of the fees." As the district court correctly noted, Gowdy fails to cite case law or statutes to support his argument. In making his argument, Gowdy also fails to fully explain the details of his critique of the bankruptcy court's sanction and fee

orders.  Appellees counter that Gowdy's appeal of the fee orders was untimely and that the bankruptcy court has wide discretion in fashioning an equitable remedy.

Notwithstanding the foregoing, we are compelled to reverse as to the quantity of the fee award.  First, we conclude Gowdy's appeal is not untimely.  And second, we conclude the fee award cannot include fees beyond those reasonably related to litigation and asset recovery efforts surrounding the contempt litigation.  See Abbott Labs. v. Unlimited Beverages, Inc., 218 F.3d 1238, 1242 (11th Cir. 2000) ("[A]ttorneys' fees in a civil contempt proceeding are limited to those reasonably and necessarily incurred in the attempt to enforce compliance."); see also Jove Eng'g, Inc. v. I.R.S., 92 F.3d 1539, 1557 (11th Cir. 1996) (noting that one purpose of civil contempt sanctions is to "compensate the complainant for . . . expenses it incurred because of the contemptuous act.").  Further, on remand, the district court must decide whether to permit the Trustee to pursue its adversary proceeding against Gowdy—a proceeding that never actually took place in light of the transfer of the substantial sums from Texas.

ii.

Under Bankruptcy Rule 8002, Gowdy had 14 days from the "entry of the judgment, order, or decree being appealed" to file a notice of appeal.  The timely filing of a notice of appeal "is jurisdictional." In re Williams, 216 F.3d 1295, 1298 (11th Cir. 2000).  Gowdy timely moved to stay and reconsider the July 17 fee disbursal order, but did not file a notice of appeal until April 16, 2014, after the final sanctions judgment was entered and the court ordered the remainder of the fees disbursed to Mitchell.  While the language of the rule suggests that Gowdy should have filed a notice of appeal within 14 days of the bankruptcy court's order denying his motion for reconsideration of the fee disbursal order, we conclude he was not required to do so in the circumstances of this case.  In the July 17 order, the bankruptcy court characterized the disbursal being authorized as an "interim" award and declined to finally resolve the Trustee's disbursal motion until it held a hearing and entered a final judgment regarding the contempt sanctions.  Rule 8002(a)(1) does not require a party to a bankruptcy proceeding to file a separate notice of appeal for each interim fee disbursal at least where, as here, the interim order reserves decision on a substantial intertwined portion of the disbursal motion. The Trustee's motion for the disbursal of the settlement funds was not substantially resolved until the court granted the portion of the order requesting disbursal of the fees to Mitchell and simultaneously entered final judgment in Mitchell's favor. Gowdy timely appealed from that order.

16

iii.

Regarding the actual sanction award and the absence of any resolution of the conversion claim, we believe it is necessary to recount in additional detail what occurred after the Trustee received $224,818.63 from the Texas court registry on May 29, 2013.  Instead of continuing to pursue the adversary proceeding, the Trustee filed a motion to summarily disburse Gowdy's settlement funds in the following manner: $135,167.95 to Mitchell; $80,465.78 to Trustee's Counsel; and $9,184.90 to Trustee's Local Counsel in Texas.  On July 17, 2013—even though the bankruptcy court had not entered a sanctions award against Gowdy and the adversary proceeding had not been resolved—the court ordered allocation of the Trustee's and attorneys' fees and scheduled a hearing to consider disbursement to Mitchell.  The bankruptcy court did not identify the fees as "reasonable and necessarily incurred in the attempt to enforce compliance."  Abbott Labs, 218 F.3d at 1242.  Instead, the court explained the fees were reasonable in light of the work performed during the entire 20-year bankruptcy proceeding.

Finally, on March 7, 2014, the bankruptcy court imposed the sanction award in favor of Mitchell, which was a judgment "in favor of Mitchell in the amount of $372, 209.02."  The court ordered the Trustee to transfer to Mitchell the

17

$133,433.75 remaining from Gowdy's settlement, and then entered a final judgment against Gowdy for the rest of the sanction award, $238,775.27.

Bankruptcy courts have broad discretion in awarding professional fees in bankruptcy proceedings. Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1519 (11th Cir. 1990) ("District courts have broad discretion in fashioning civil contempt sanctions."). And, in awarding sanctions for civil contempt, a court "ha[s] numerous options, among them: a coercive daily fine, a compensatory fine, attorneys' fees and expenses." Citronelle–Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1304 (11th Cir. 1991). A fee award in relation to a civil contempt sanction, however, is not without limit, and we conclude the bankruptcy court abused its broad discretion because it possessed no legal basis to require Gowdy to pay the full Trustee's fee. In re Red Carpet Corp. of Panama City Beach, 902 F.2d 883, 890 (11th Cir. 1990) ("An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous.").

We reach this conclusion because Gowdy was never adjudged liable to the bankruptcy estate for converting the JANICE. Rather, he was found liable for contempt pursuant to Mitchell's motion. Therefore, the fee award should have

18

been limited to an amount necessary to "compensate the complainant"—Mitchell—"for losses and expenses . . . incurred because of the contemptuous act [or to] coerce the contemnor into complying with the court order." Jove Eng'g, 92 F.3d at 1557. The bankruptcy court could have required Gowdy to compensate the Trustee for the efforts in obtaining the personal injury settlement funds from Texas, which were costs reasonably incurred in enforcement of the court's sanction order. But before being required to bear the full Trustee's fees, Gowdy was entitled to a jury trial in an Article III tribunal on the Trustee's conversion claim. See Stern, 564 U.S. at 503.

## III.

For the reasons above, we affirm the judgment of the district court in all respects other than the amount of the fee award. We remand for the bankruptcy court to award a fee based on the work the Trustee performed pursuant to Mitchell's motion for contempt. The lower court also shall determine whether the Trustee may pursue its adversary claim at this late date.

**AFFIRMED in part, REVERSED and REMANDED in part**.