**IN RE: TLFO, LLC, Debtor(s).**

**TransUnion Risk and Alternative Data Solutions, Plaintiff,**

v.

**The Best One, Inc. and Ole Poulsen, Defendants.**

**CASE NO.: 13–20853–BKC–PGH ADV. NO.: 14–1793–BKC–PGH–A**

United States Bankruptcy Court, S.D. Florida, West Palm Beach Division.

Signed May 18, 2017

---

48. *In re Cooke (Cooke v. Uranksy),* 412 So.2d 340, 341 (Fla. 1982).

Philip D. Anker, Ross E. Firsenbaum, Wilmer Cutler Pickering Hale & Dorr LLP, Brian K. Gart, Esq., Gordian Group, LLC, New York, NY, David L. Gay, Esq., Paul Steven Singerman, Esq., Miami, FL, Michael R. Heyison, Boston, MA, for Plaintiff.

Laurel W. Marc–Charles, Miami, FL, Arthur H. Rice, Esq., Lisa M. Schiller, Esq., Ft. Lauderdale, FL, Luis Salazar,

Esq., Salazar Law, Coral Gables, FL, for Defendants.

## ORDER ON DEFENDANT TBO'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 597) RELATING TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Paul G. Hyman, Jr., Judge United States Bankruptcy Court

**THIS MATTER** came before the Court upon the Motion for *Partial Summary Judgment on Threshold Legal Issues* (the "Motion for Partial Summary Judgment") (ECF No. 597) filed by Defendant The Best One, Inc. ("TBO") as to the *Motion and Memorandum of Law in Support of its Application for Attorney's Fees and Costs* (the "Motion in Support of Attorney's Fees and Costs") (ECF No. 527) filed by Plaintiff TransUnion Risk and Alternative Data Solutions, Inc. ("TRADS").

On August 18, 2016, after a seven-day trial, the Court issued a *Trial Order* (ECF No. 473) and *Final Judgment* (ECF No. 474)[1] in favor of TRADS as to (1) the *Second Amended Complaint* (the "Adversary Complaint") (ECF No. 61) and the *Motion to Enforce Sale Order and to Hold The Best One, Inc. in Contempt* (the "Motion for Contempt") (ECF No. 1282, Case No. 13–20853–BKC–PGH)[2] filed by TRADS; (2) the *Answer, Affirmative Defenses, and Counterclaim* (the "TBO Counterclaim") (ECF Nos. 333 and 334) filed by Defendant TBO; and (3) the *Answer, Affirmative Defenses, and Counterclaim* (the "Poulsen Counterclaim") (ECF Nos. 335 and 336) filed by Ole Poulsen

("Poulsen," and together with TBO, the "Defendants"). Of particular relevance here, the Court found in favor of TRADS as to its Motion for Contempt, holding "Defendant TBO *nka* IDI, Inc. is hereby found to have knowingly violated the Sale Order (ECF No. 610, Case No. 13–20853) and shall be sanctioned so as to compensate [TRADS] for the attorney's fees and costs incurred in this litigation." Trial Order at 81. Moreover, the Court held specifically that it was "retain[ing] jurisdiction to determine the amount of damages and attorney's fees to be awarded in favor of [TRADS] and against Defendant TBO *nka* IDI, Inc.." *Id.* at 82.

Defendants TBO and Poulsen along with IDI, Inc. appealed the Court's Trial Order and Final Judgment. Defendants TBO and Poulsen also filed a *Motion to Stay Pending Appeal* (ECF No. 487) in this Court. After the Court denied those Motions, *see Order* (ECF No. 512), Defendants TBO and Poulsen and IDI, Inc. filed Motions to Stay Pending Appeal in the District Court. The District Court denied those Motions. *See Notice of Filing* (ECF No. 560). Subsequently, Defendants TBO and Poulsen and IDI, Inc. appealed the District Court's decision to the Eleventh Circuit Court of Appeals, which denied the appeal of the District Court's decision to deny the Motions to Stay Pending Appeal. *See Orders* (ECF Nos. 570 and 571).

On October 7, 2016, TRADS filed the Motion in Support of Attorney's Fees and Costs, along with two *Declarations* (ECF Nos. 528 and 529) and a *Bill of Costs* (ECF No. 530). After the Eleventh Circuit issued

---

1. Defendant TBO and IDI, Inc. appealed the Trial Order and Final Judgment. The appeals are pending.

2. TransUnion–TRADS filed the Motion to Enforce Sale Order in the underlying TLO, LLC bankruptcy proceeding. *See* Case No. 13–20853–BKC–PGH. On January 28, 2015, the

Court entered an Order on the Motion to Enforce Sale Order; in which the Court held that the Motion alleged substantially the same facts as those alleged in this adversary proceeding and that as a result, the Motion to Enforce Sale Order would be consolidated with this adversary proceeding. *See Order* (ECF No. 1297, Case No. 13–20853).

its decision, Defendant TBO filed the Motion for Partial Summary Judgment now before the Court, and the Court established a schedule for the parties to submit additional briefing. *See* TRADS's *Response* (ECF No. 601) and Defendant TBO's *Reply* (ECF No. 603). Defendant TBO's Motion for Partial Summary Judgment seeks resolution of six discrete legal issues related to TRADS's Motion in Support of Attorney's Fees and Costs. The Court will address each in turn.

## I. TRADS did not forfeit its entitlement to prove damages

■ Defendant TBO asserts that TRADS should not be permitted to put on evidence as to its damages—which, in a civil contempt claim, include attorney's fees and costs—because both liability and damages must be proved at trial and the trial here has already concluded. Particularly, Defendant TBO asserts that the Federal Rules of Civil Procedure limit what types of attorney's fees and costs may be sought by motion post-trial.

To begin with, it is important to note that the trial has not concluded. The liability portion of the trial concluded in June 2016. However, in its Trial Order and Final Judgment, the Court expressly reserved jurisdiction to determine TRADS's entitlement to, and amount of, attorney's fees and costs, and Defendant TBO did not object to this procedure.

■ Even though the contention that the trial concluded in June 2016 is inaccurate, the Court will nonetheless address Defendant TBO's argument that the Federal Rules preclude TRADS from seeking its attorney's fees and costs at this stage in the proceedings. Federal Rule of Civil Procedure 54(d)(2)(A), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7054(b)(2), provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." The construction of Rule 54(d)(2)(A) is such that it merely exempts claims for attorney's fees that must be proved as an element of damages from the requirement that a claim for attorney's fees and costs must be made by post-trial motion. The text of Rule 54(d)(2)(A) does not *mandate* anything with respect to claims for attorney's fees that must be proved as an element of damages. At most, Rule 54(d)(2)(A) simply provides that fees and costs which constitute damages may be pleaded like any other element of a case and need not be requested by motion for first time after the trial has concluded. *See* Fed. R. Civ. P. 54, advisory committee's note to 1993 amendment (clarifying Rule 54(d)(2) only to explain that subsection (d)(2) "does not … apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages <u>typically</u> are to be claimed in a pleading and may involve issues to be resolved by a jury" (emphasis added)). This interpretation is further supported by the advisory committee notes to Bankruptcy Rule 7008:

> The rule is amended to delete subdivision (b), which required a request for attorney's fees always to be pleaded as a claim in an allowed pleading…. The procedures for seeking an award of attorney's fees are now set out in Rule 7054(b)(2), which makes applicable most of the provisions of Rule 54(d)(2) F.R.Civ.P. As specified by Rule 54(d)(2)(A) and (B) …, a claim for attorney's fees must be made by a motion filed no later than 14 days after entry of the judgment unless the governing substantive law requires those fees to be proved at trial as an element of damages. When fees are an element of damages, such as when the terms of a contract provide for the recovery of fees

incurred prior to the instant adversary proceeding, the general pleading requirements of this rule still apply.

Fed. R. Bankr. P. 7008, advisory committee's note to 2014 amendment. *See also, In re Carey*, 446 B.R. 384, 389–90 (9th Cir. BAP 2011) (noting that the Rules do "not shed any light on whether ... a claim [for attorney's fees]· must be proven at trial or left for determination on application or motion following the trial").

Certainly, nothing in the text of Rule 54(d)(2)(A) precludes a court from bifurcating a trial or evidentiary hearing as to the issue of attorney's fees and costs, even when attorney's fees and costs are an element of damages. *See U.S. v. Peter R. Brown Constr., Inc.*, 674 Fed.Appx. 901, 910 (11th Cir. 2017) (holding that the district court did not err in directing the prevailing party to file a post-trial motion for contractual attorney's fees as "Rule 54 does not foreclose motions for attorneys' fees provided for by contract" and "courts enjoy broad discretion in deciding how to best manage the cases before them"). Indeed, bifurcating a trial in this manner generally conserves both judicial resources and reduces the costs of litigation by sparing courts from presiding over and the parties from preparing for the presentation of evidence as to damages in cases where courts find there is no liability. *In re Carey*, 446 B.R. at 390 (noting that "a claim for attorney's fees could be a subject for the presentation of evidence at trial, but arguably, judicial economy is better served by leaving determination of a reasonable fee award to the prevailing party to follow the trial").

Here, the Court bifurcated the Trial as to damages, including attorney's fees and costs, and reserved jurisdiction in the Trial Order to determine the amount of attorney's fees and costs at a later date after determination of liability. This is a customary practice for this Court and for many other courts around the country. *See, e.g SEC v. Detroit Mem'l Partners, LLC*, No. 1:13-CV-1817-WSD, 2016 WL 1169484, at *1 (N.D. Ga. Mar. 21, 2016) (after finding defendant in contempt and bifurcating the trial as to damages, the court ruled on the plaintiff's application for attorney's fees and costs and awarded attorney's fees and costs as contempt damages); *E. Roofing Sys., Inc. v. Simon Prop. Grp., Inc.*, No. 3:14-CV-00717, 2016 WL 1367176, at *6 (M.D. Pa. Apr. 5, 2016) (holding that "an award of attorney fees [as an element of damages pursuant to a contract] is premature at this time, and ... the appropriate vehicle for seeking an award of attorney fees for work done during this case is a Rule 54(d)(2) motion, after a dispositive decision has been entered"); *Rissman v. Rissman*, 229 F.3d 586, 588 (7th Cir. 2014) (holding that "[f]ees for work done during the case should be sought after decision, when the prevailing party has been identified and it is possible to quantify the award"). In fact, TRADS and Defendant TBO believe that the trial as to attorney's fees and costs will require three full days. This alone is confirmation of the wisdom of bifurcating this trial as to liability and damages. Had the Court required TRADS to present evidence of its damages at the time of the trial on liability and then ultimately ruled in favor of Defendant TBO as to liability, it would have wasted three days of the Court's and the parties' time, and the parties would have been required to spend significant resources preparing for three unnecessary trial days.

Defendant TBO provides no valid basis for its argument that TRADS should be precluded from presenting evidence as to attorney's fees and costs simply because TRADS did not present this evidence at the Trial. Therefore, TRADS will be permitted to present evidence as to the attorney's fees and costs it incurred as a result of Defendant TBO's civil contempt.

## II. TRADS's fees must be reasonable, but the lodestar method is not required

■ Defendant TBO asserts that the attorney's fees awarded as damages pursuant to a finding of contempt must be reasonable and that the lodestar method should be used to compute a reasonable fee award. TRADS, on the other hand, contends that there is no strict reasonableness requirement as the purpose of awarding fees in civil contempt cases is to make the innocent party whole. Specifically, TRADS contends that "the lodestar method, requiring exacting scrutiny of hourly rates and hours billed, does not accomplish that purpose and therefore is not required." Resp. at 5 (*citing Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olympia Holding Corp.*, 140 Fed.Appx. 860, 864 (11th Cir. 2005)).

■ Compensatory sanctions may be imposed for actual damages incurred as a result of a violation of a bankruptcy court order. *In re Rhodes*, 563 B.R. 380, 388 (Bankr. M.D. Fla. 2017) (*citing Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1325 (11th Cir. 2015)). "[A]n 'award of attorney fees to the injured party in a contempt case is within the ... court's discretion.' " *SEC v. Detroit Mem'l Partners*, 2016 WL 1169484, at *1 (*quoting Sizzler Family Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1534 (11th Cir. 1986)); *see also, New England Tech., Inc. v. Sigma Tech Sales, Inc.*, No. 09-61347-CIV, 2011 WL 4014346, at *2 (S.D. Fla. Sept. 9, 2011) (noting that the court has "broad discretion" to award attorney's fees and costs); *In re Bavelis*, 535 B.R. 228, 236–37 (Bankr. S.D. Ohio 2015) (noting that the court has "broad discretion to fashion an appropriate remedy for ... contempt"). The Court's discre-

tion, however, is not without limit. Where, as here, the purpose of the sanction is compensatory, the fine imposed must be "based upon evidence [3] of [the plaintiff's] actual loss." *SEC v. Detroit Mem'l Partners*, 2016 WL 1169484, at *1 (*quoting McGregor v. Chierico*, 206 F.3d 1378, 1385 n.5 (11th Cir. 2000)). The fee award must be limited to those fees reasonably and necessarily incurred in the attempt to enforce compliance with the relevant court order. *SEC v. Detroit Mem'l. Partners*, 2016 WL 1169484, at *1 (*quoting Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000)). The fee award, however, "cannot include fees beyond those reasonably related to litigation and asset recovery efforts surrounding the contempt litigation." *In re Ocean Warrior, Inc.*, 835 F.3d 1310, 1318 (11th Cir. 2016). Indeed, the Supreme Court of the United States recently noted that "a sanction counts as compensatory only if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based" and that "[a] fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. "*Goodyear Tire & Rubber Co. v. Haeger*, — U.S. ——, 137 S.Ct. 1178, 1186, 197 L.Ed.2d 585 (2017) (*quoting Mine Workers v. Bagwell*, 512 U.S. 821, 834, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)).

■ "Sanctions for civil contempt are not equivalent with typical payment of attorneys' fees, and civil contempt sanctions do not <u>require</u> the use of the lodestar method." *SEC v. Detroit Mem'l Partners*, 2016 WL 1169484, at *1–2 (emphasis added) (*quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 140 Fed.Appx. at 864). As discussed above, the award of attorney's fees in a civil contempt case must be based on the plaintiff's actual loss and need not

---

**3.** Damages (i.e., actual loss) in a civil contempt action "must be proven by a preponderance of the evidence." *McGregor v. Chieri-* *co*, 206 F.3d at 1387. "The damages must be based on actual loss and shown with some certainty." *In re Rhodes*, 563 B.R. at 388.

meet the stringent reasonableness requirements of the lodestar method. However, the award must still fall within the range of reasonableness as an unreasonable award would be subject to reversal on appeal as an abuse of discretion. For this reason, courts sometimes use the lodestar method to evaluate the reasonableness of attorney's fees, multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *SEC v. Detroit Mem'l Partners*, 2016 WL 1169484, at *1 (*quoting In re Trinity Indus., Inc.*, 876 F.2d 1485, 1495 (11th Cir. 1989)). Of course, courts choosing to use the lodestar method to evaluate a fee award in a civil contempt case may, in their discretion, adjust the lodestar result upward or downward depending on the circumstances of the particular case. *Id.* at *1–2.

Based upon the considerations discussed above, the Court determines that it will not adhere to the lodestar method. Instead, the Court will consider evidence of the actual attorney's fees and costs incurred by TRADS in its efforts to enforce the Sale Order and in its discretion, will adjust that amount downward if an adjustment is necessary in the Court's expert opinion[4] to bring the amount within the range of reasonableness.

## III. Determination of a reasonable hourly rate is unnecessary

To represent it in this proceeding, TRADS hired WilmerHale, a New York City law firm charging New York City rates.[5] Defendant TBO takes issue with awarding fees based on New York City rates, contending that in accordance with the lodestar analysis, the Court must apply a "reasonable hourly rate" which is the "prevailing market rate in the relevant legal community"—the place where the case is filed. Mot. for Partial Summ. J. at 4. Because that place is South Florida, it is Defendant TBO's position that TRADS's fee award should be limited to a reasonable number of hours multiplied by the prevailing market rate in South Florida.

The Court, however, determined in the previous section that it would not engage in the lodestar analysis to determine TRADS's fee award. As discussed above, the purpose of awarding attorney's fees and costs as damages in a contempt case is to compensate the aggrieved party. The aggrieved party, here TRADS, is entitled to hire whichever counsel it chooses and to pay the rates charged by that counsel in order to defend against a violation of a valid court order or to enforce a valid court order. In order to compensate the aggrieved party in a contempt case, the fee award must be based on evidence of the actual fees and costs incurred by that party. If the attorney's fees awarded are not based on evidence of the actual fees incurred and instead are based on reasonable fees, the aggrieved party will not be made whole. Accordingly, in a contempt case, the Court need not determine a reasonable hourly rate and a reasonable number of hours expended on the litigation and then award attorney's fees based on those determinations.[6] Instead, the Court will

---

4. In evaluating a claim for attorney's fees, the Court, itself being an expert on this subject, "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment." *SEC v. Detroit Mem'l Partners*, 2016 WL 1169484, at *1 (*quoting Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)).

5. WilmherHale also associated local counsel from South Florida to assist in the representation.

6. The cases cited by Defendant TBO were not decided in contempt cases or cases in which the fee award was obviously compensatory. The court in *Procaps S.A. v. Patheon Inc.* awarded attorney's fees in the context of a Rule 37 motion; Rule 37 "*requires* the Court to enter an award of <u>reasonable</u> expenses,

consider evidence of the actual fees and costs incurred by TRADS and then will determine whether that total amount is reasonable.

## IV. TRADS may only recover fees reasonably and necessarily incurred in attempting to enforce the Sale Order

▮ According to Defendant TBO, there is a significant difference between the attorney's fees and costs incurred by TRADS in prosecuting its Motion for Contempt and the attorney's fees and costs incurred by TRADS in prosecuting the adversary proceeding. Defendant TBO contends that TRADS is only entitled to an award of the attorney's fees and costs incurred in prosecuting the Motion for Contempt. Particularly, Defendant TBO argues that that TRADS's adversary proceeding sought declaratory judgment as to numerous factual issues which at the time of the sale, were neither presented to the Court nor·decided by the Court. Finally, Defendant TBO points out that there is no claim for attorney's fees or costs in TRADS's Adversary Complaint. TRADS contends that it is entitled to recover the attorney's fees and costs incurred in attempting to enforce the Sale Order, which attempt includes not only the Motion for Contempt but also the adversary proceeding. According to TRADS, its sole purpose in filing both the Motion for Contempt and the adversary proceeding was to enforce the Sale Order. The Court agrees with TRADS.

The factual allegations contained in both the Motion for Contempt and the Adversary Complaint are substantially the same,

and it is important to remember that the Motion for Contempt and the Adversary Complaint were consolidated and that the Court issued one Trial Order and one Final Judgment with respect to both matters. Moreover, the Adversary Complaint alleged, in pertinent part:

72. An actual controversy exists between TRADS, on the one hand, and TBO and Poulsen, on the other, concerning the effect of the Sale Order, TBO's and Poulsen's assertion of any interest in the IP notwithstanding the Sale Order, the adequacy of the notice of the Sale to Poulsen, and the current ownership of the IP in light of the Sale Order.

73. This Court should declare that, pursuant to the Sale Order, TRADS owns the IP free and clear of any interest of Poulsen or TBO because Poulsen was given adequate advance notice of the Sale of the IP free and clear of his interests, if any, and, therefore, he had no interests in the IP to sell to TBO.

74. This Court should also declare that TRADS owns the IP free and clear of any purported interest of Poulsen or TBO because Poulsen never had any ownership interest in the IP. Poulsen was an employee of the Debtor when he worked on the IP, and received generous compensation including an equity interest in the Debtor in return for his contribution of time and services to the Debtor related to the IP. Thus, the IP was a work made for hire that was the exclusive property of the Debtor at the time of the Sale. See 17 U.S.C. §§ 101 & 201(b).

75. This Court should further declare that even if Poulsen somehow once had

---

including attorney's fees, against the party or attorney advising the conduct which necessitated the successful discovery motion." No. 12-24356-CIV, 2013 WL 6238647, at *4 (S.D. Fla. Dec. 3, 2013) (underline emphasis added). *Norman v. Housing Authority of City of*

*Montgomery,* 836 F.2d 1292 (11th Cir. 1988) and *ACLU of Georgia v. Barnes,* 168 F.3d 423 (11th Cir. 1999) were decided in the context of civil rights cases for which *reasonable* attorney's fees are statutorily authorized.

any interest in the IP, that interest was extinguished by the Sale Order, and the failure of Poulsen and TBO to timely appeal the Sale Order or timely move for relief from the Sale Order.

76. This Court should also declare that TBO is bound by the Sale Order, because (a) its claimed interest in the IP is derivative of Poulsen's purported interest, and Poulsen had notice of the Sale and the Sale Order and did not object, and, in any event, (b) TBO's officers were also provided notice of the Sale and Sale Order and did not object. This Court should declare that TBO took any possible interests of Poulsen in the IP with actual knowledge of the terms of the Sale Order. This Court should declare that, since TBO and individuals closely related to it knew of the Sale Order at the time of the purported purchase of the IP from Poulsen and sought to obtain some or all of the proceeds of the Sale, TBO is estopped from asserting both that the Sale was ineffective and that it has any interest in the IP.

77. This Court should further declare that TBO has violated, and is in contempt of, the Sale Order, including, without limitation, paragraphs 14 and 19 thereof, by interfering and attempting to interfere in TRADS's "use and enjoyment of the Acquired Assets based on or related to" Poulsen's purported interests and its failure to "surrender possession or control of [the] Acquired Assets to" TRADS. Sale Order, at pp. 22 and 24.

78. This Court should also declare that, to the extent that he asserts or claims to hold an interest in any IP, Poulsen has violated, and is in contempt of, the Sale Order, including, without limitation, paragraphs 14 and 19 thereof, by interfering and attempting to interfere in TRADS's "use and enjoyment of the Acquired Assets based on or related to" his purported interests and his failure to "surrender possession or control of [the] Acquired Assets to" TRADS. Sale Order, at pp. 22 and 24.

79. In addition, this Court should declare that TBO and Poulsen are estopped from asserting any ownership interests over the IP for the additional reason that the Poulsen's and TBO's delay in asserting such rights, knowing full well that TRADS had paid $154 million to acquire full ownership of the IP, was unreasonable. Neither Poulsen nor TBO, whose purported interest was obtained from Poulsen and is therefore accountable for Poulsen's delay prior to the purported "sale," can wait to assert a claim, with full awareness of TRADS's acquisition of the IP, in order to harass TRADS and engage in patently unfair business tactics that interfere with TRADS's contractual rights.

Adversary Compl. ¶¶ 72–79. These allegations and requests for declaratory relief are aimed at enforcing the Sale Order. TRADS's ultimate goal is evident in the final paragraph of the Adversary Complaint: "Put simply, this Court should declare that, pursuant to the Sale Order, TRADS owns the IP in full, and that neither TBO nor Poulsen have any interest in the IP." *Id.* at ¶ 80. Obtaining declaratory relief is one method of enforcing an order. It is likely that TRADS sought broader declaratory relief than was probably necessary—such as a declaration as to the ownership of the property at issue at the time of the sale—in order to cover all of its bases and to avoid future litigation. Such strategy does not transform the entire adversary proceeding into something other than an attempt to enforce the Sale Order.

The fact that TRADS did not specifically request recovery of attorney's fees and costs in the Adversary Complaint is not determinative. As discussed in a preceding section, Rule 54 does not mandate *when* a request for attorney's fees that are a com-

ponent of damages must be made or *when* such damages must be proved. Moreover, courts have inherent contempt powers in all. proceedings, including bankruptcy, to "achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (noting also that "the inherent power of a court can be invoked even if procedural rules[, statutes, or case law] exist which sanction the same conduct"). Additionally, under 11 U.S.C. § 105, Congress has expressly granted to courts independent statutory powers in bankruptcy proceedings to "carry out the provisions of" the Bankruptcy Code through "any order, process, or judgment that is necessary or appropriate." 11 U.S.C. § 105(a). Pursuant to these powers, the Court may *sua sponte* sanction any party who violates its orders. Finally, in its Motion for Contempt, TRADS explicitly requested the Court to "require [Defendant TBO] to compensate TRADS for the actual attorney's fees and costs it has incurred, and continues to incur, in defending against [Defendant TBO's] knowing violation of the Sale Order." Mot. for Contempt at 19.

For the reasons just discussed, the Court finds that TRADS is entitled to recover all of its attorney's fees and costs, subject to any conditions stated elsewhere in this Order, that TRADS establishes were reasonably and necessarily incurred in an attempt to enforce the Sale Order, including fees and costs stemming from the prosecution of the adversary proceeding.

## V. The Court will not consider evidence of attorney's fees and costs incurred on still-pending appeals at this time

■ Defendant TBO contends that a substantial portion of the attorney's fees TRADS seeks to recover were incurred on appeals which are still pending and

that TRADS is not entitled to recover such fees. TRADS asserts it is indeed entitled to recover attorney's fees and costs incurred on appeal as such fees and costs are a direct result of Defendant TBO's contempt. The Court ruled in the preceding section that TRADS is entitled to recover any fees and costs that were reasonably and necessarily incurred in an attempt to enforce the Sale Order. It is axiomatic that attorney's fees and costs incurred by TRADS in defending against Defendant TBO's appeal are necessary to obtain meaningful and lasting enforcement of the Sale Order.

However, the Court finds that it is impractical to rule on attorney's fees and costs incurred by TRADS in defending against the appeal until after resolution of the appeal. To do otherwise would mean that the Court would have to consider evidence of the attorney's fees and costs incurred to date only to have to revisit the issue upon resolution of the appeal. It makes more sense, and does not prejudice TRADS, to hear evidence of all of the attorney's fees and costs incurred on appeal at one time after resolution of the appeal. Accordingly, the Court will not consider evidence of the attorney's fees and costs incurred by TRADS on appeal at this stage in the proceedings.

## VI. The Court will not deny TRADS's Motion with leave to re-file

■ Finally, Defendant TBO urges the Court to deny TRADS's Motion in Support of Attorney's Fees and Costs without prejudice to TRADS refiling the Motion after resolution of the appeals. TRADS, on the other hand, contends that if the Court were to follow this procedure, it would be tantamount to granting a stay of the proceedings, which this Court, the District Court, and the Court of Appeals have already declined to do. While the Court un-

doubtedly has discretion to deny TRADS's Motion in Support of Attorney's Fees and Costs without prejudice and to direct TRADS to refile the Motion after resolution of all pending appeals, the Court declines to do. This Court is the best court to determine entitlement to the attorney's fees and costs incurred with respect to proceedings that occurred in front of this Court, and delaying this determination until after resolution of the pending appeals may result in a different court making this determination as a result of this Court's upcoming retirement. Moreover, this procedure will not prejudice Defendant TBO. If Defendant TBO is ultimately successful on appeal, the award of attorney's fees and costs will be reversed and TRADS will be required to disgorge any attorney's fees and costs it has recovered from Defendant TBO.

## ORDER

For the reasons discussed above, the Court hereby **ORDERS AND ADJUDGES** that Defendant TBO's Motion for Partial Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. TRADS did not forfeit its entitlement to prove damages by failing to introduce evidence of damages at the initial trial.
2. The Court will not adhere to the lodestar method. Instead, the Court will consider evidence of the actual attorney's fees and costs incurred by TRADS in its efforts to enforce the Sale Order and in its discretion, will adjust that amount downward if an adjustment is necessary in the Court's expert opinion to bring the total amount of attorney's fees and costs within the range of reasonableness.
3. TRADS is not limited in its recovery of attorney's fees to an amount based on a reasonable hourly rate multiplied by a reasonable number of hours.
4. TRADS may only recover fees and costs it can show were reasonably and necessarily incurred in attempting to enforce the Sale Order, which may include fees and costs incurred in the prosecution of the adversary proceeding and in defending still-pending appeals.
5. The Court will not consider evidence of attorney's fees and costs incurred on appeal at this stage in the proceedings. Instead, the Court will consider evidence of attorney's fees and costs incurred on appeal upon final resolution of all pending appeals.
6. The Court will not deny TRADS's Motion at this stage in the proceedings with leave to re-file after final resolution of all pending appeals.

**ORDERED in the Southern District of Florida on May 18, 2017.**