**In re XAVIER'S OF BEVILLE, INC., Debtor.**

**Bankruptcy No. 92–2360–BKC–3P7.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Sept. 12, 1994.

Michael Jorgensen, Jacksonville, FL, for trustee.

Armistead Ellis, Daytona Beach, FL, for respondent.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the chapter 7 trustee's motion for civil contempt and sanctions against Richard Jaffe and the Jaffe Corporation as General Partner of J–3 Land Partners, Ltd., for violation of the automatic stay imposed by 11 U.S.C. § 362(a). Hearings on the motion were held January 25, March 24, April 7, and May 17, 1994, and, upon the evidence presented, the Court enters these findings of fact and conclusions of law:

### Findings of Fact

Beginning in September, 1990, debtor leased commercial space from the Jaffe Corporation as general partner of J–3 Land Partners, Ltd. ("respondent") to operate a beauty salon business. The lease went into default in December, 1991. In April, 1992, respondent filed a state court action seeking a distress writ and eviction of debtor from the leased premises. A distress writ against debtor was entered April 8, 1992, and a writ of possession was issued and served April 20, 1992. Respondent took possession of the leased space and its contents on April 23, 1992.

Approximately one hour later debtor filed its chapter 11 petition. Debtor's principal, Karen Fontana ("Fontana") testified that she called respondent's principal, Richard Jaffe ("Jaffe") and informed him that debtor had filed the bankruptcy case. Debtor's attorney, Robert Altman, during the chapter 11 case, also called Jaffe to inform respondent of the filing, the automatic stay and the potential implications of the stay. It is not clear whether debtor's attorney made a demand for turnover at that time, rather debtor's attorney testified that Jaffe indicated that he would not turnover the equipment and inventory in the store at the time he took possession. Debtor's attorney spoke to Jaffe twice on April 23, 1992.

Upon taking possession of the premises, Jaffe took an inventory of the equipment in the salon. Respondent boxed the inventory but some of that inventory was used to continue operations until respondent could resupply the salon. The equipment on the premises was used by respondent to operate a salon.

Debtor's attorney sent respondent a letter dated June 2, 1992, which states that use of debtor's inventory and equipment violates the automatic stay and that debtor has invoices showing ownership of the inventory and equipment. The letter also requests turnover of the inventory and equipment and compensation for use of estate assets from the petition date.

Respondent responded to the June 1, 1992, letter with a letter dated June 20, 1992, in which Jaffe states that respondent does not believe it is using estate assets. Jaffe requests copies of the invoices showing ownership and states if any of the assets are estate property respondent will cooperate in safeguarding or returning the property.

Debtor's attorney again wrote to respondent on June 19, 1992, and informed respondent that the case was converting from chapter 11 to chapter 7. The letter states that all invoices and receipts will be turned over to the chapter 7 trustee.

Debtor's attorney testified that the cause of the conversion from chapter 11 to chapter 7 was debtor's inability to get its equipment back. Debtor's principal also testified that the reason for the conversion was the inability to get the equipment and that without the equipment it was not feasible to re-open the salon in another location.

By letters dated August 5, 1992, and August 27, 1992, respondent again requested copies of invoices showing debtor's ownership of equipment and inventory. These letters followed a June 29, 1992, letter from the chapter 7 trustee informing respondent of the voidability of taking possession of debtor's property and suggesting that respondent contact the trustee if it is using the equipment and inventory.

By letter dated September 8, 1992, the trustee's attorney, Michael Jorgensen, provided respondent with a partial inventory of equipment claimed by the estate. The letter also demands turnover pursuant to 11 U.S.C. §§ 542 and 543 and compensation for the use of the equipment for the four months.

A final letter was sent to the trustee's attorney on December 27, 1993, which states that respondent will immediately turnover the property belonging to debtor. The letter states that this is respondent's offer to "mitigate damages" of the trustee.

Respondent had an appraisal of a list of equipment prepared by Jaffe done on May 26, 1992. The equipment was valued at $5,250.00. This appraisal does not include the inventory of debtor. Upon making the initial appraisal, the appraiser understood that all equipment was operational. On reappraising the equipment on March 18, 1994, the amount of the appraisal was decreased by $1,800.00 because some of the hydraulic chairs and hair dryer stations were no longer operational.

A second appraisal was done by a personal property appraiser hired by the trustee. The second appraisal valued the equipment and inventory at $9,216.00. The second appraisal covered a more extensive list of equipment and inventory than did the May 26, 1992, inventory. Both appraisers testified that if the equipment remained in the same condition as on the date of the eviction the value of the property would not change.

## Conclusions of Law

Initially, the Court must determine whether respondent's actions amount to a violation of the stay imposed by 11 U.S.C. § 362 and, if a willful violation occurred, whether that violation warrants a finding of civil contempt.

## Violation of the Automatic Stay

The filing of a petition in bankruptcy operates as a stay as to "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title" and "any act to obtain possession of property of the estate or of property of the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(2), (a)(3).

A violation of the automatic stay is willful if the action is done deliberately; no specific intent to violate a court order is necessary. *In re Kilby,* 100 B.R. 579 (Bankr. M.D.Fla.1989). Upon learning of the bankruptcy, the creditor has a duty to return the status quo without requiring a specific court order. *In re Stephen W. Grosse, P.C.,* 84 B.R. 377 (Bankr.E.D.Pa.1988), *aff'd* 96 B.R. 29 (E.D.Pa.1989).

If a willful violation of the stay occurs, the Code provides the individual debtor with compensatory damages. 11 U.S.C. § 362(h); *Id.* However, this Court has held that § 362(h) protection is not available to a corporate debtor. *In re Carney & Sons Trucking Serv., Inc.,* 142 B.R. 497 (Bankr.M.D.Fla.1992). A corporate debtor is not without a remedy for a willful violation of the stay. *Id.* Rather, a corporate debtor's remedy emanates from the Court's authority to enforce the Code and to impose sanctions for contempt. 11 U.S.C. § 105; Federal Rule of Bankruptcy Procedure 9020; *Id.; Johnston Envt'l Corp. v. Knight (In re Goodman),* 991 F.2d 613 (9th Cir.1993). In contrast to the mandatory damages provided by § 362(h), whether damages are awarded for contempt is within the discretion of the court. *In re Guardian Equipment Corp.,* 20 B.R. 821 (Bankr.S.D.Fla.1982).

Property of the estate includes "property wherever located and by whomever held ... all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). This broad definition includes debtor's interest in the inventory and equipment on the premises when respondent took possession of the salon space.

In this case, it is clear that respondent committed a willful violation of the stay. Upon taking possession of the leased premises, respondent began exercising control over estate property: the equipment and inventory of debtor. On the day he took possession of the premises, respondent knew of the bankruptcy and the automatic stay but failed until December 23, 1993, to consent to turnover the estate's property. Because no specific intent to violate the stay is required for a willful violation to occur, whether respondent was unsure which property had been left by a prior tenant and which belonged to debtor, respondent's continued use of estate property was deliberate and constitutes a willful violation of the stay.

Having determined that respondent's actions constitute a willful violation of the stay, and that a corporate debtor may recover its damages in a contempt action when a willful violation occurs, the Court must now determine what damages are appropriate.

## Civil Contempt

Upon a finding that a willful violation of the stay has occurred, imposition of sanctions is appropriate. *In re Carney & Sons Trucking Servs., Inc.,* 142 B.R. 497. The Supreme Court of the United States discussed the rationale behind an imposition of sanctions for civil contempt in *United States v. United Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). In *United Mine Workers,* the court distinguished between criminal contempt which seeks to vindicate the authority of the Court through punitive sanctions and civil contempt which may be used to coerce compliance with the court's order or to compensate the complainant for losses sustained. Imposition of civil contempt does not depend on the intent of the defendant, rather it seeks to compensate for losses or damages caused by defendant's non-compliance with the court's order.

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949). An award that goes beyond compensation may be awarded to coerce compliance with a court order. *Id.* The automatic stay amounts to an injunction and is equivalent to a court order. *In re Fry*, 122 B.R. 427 (Bankr. N.D.Okla.1990); *In re Stephen W. Grosse, P.C.*, 84 B.R. 377.

■■■■ In this case, the Court holds that a fine to gain compliance with the stay or punitive damages are not appropriate. Respondent, although belatedly, has complied with the stay by ceasing to use debtor's property and agreeing to turnover the estate property in his possession. Thus, respondent has complied with the court order and a fine to coerce compliance is unnecessary. Additionally, the Court does not find respondent's conduct sufficiently egregious to impose punitive damages. *In re Rivers*, 160 B.R. 391 (Bankr.M.D.Fla.1993).

■■■■ The estate is entitled to receive compensation for the losses caused by respondent's continuing violation of the stay. *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. Compensatory damages must be based on actual loss and be shown with some certainty. *Id.; Miller v. Allstate Ins. Co.*, 573 So.2d 24 (Fla. 3rd DCA 1990); *In re Mid–America Corp.*, 159 B.R. 48 (Bankr.M.D.Fla.1993). However, courts have relaxed this standard in cases where the fact of damage is established, but the extent and exact amount of damage is elusive. *Id.; ABC Paramount Records, Inc v. Topps Record Distributing, Co.*, 374 F.2d 455 (5th Cir.1967) (may infer award from reasonable inferences from evidence). The actual loss suffered by the estate may include attorney fees and costs. *In re Kiker*, 98 B.R. 103 (Bankr.N.D.Ga.1988).

The estate is entitled to recover its actual damages. The appraisal done by respondent's appraiser reflected that during the period respondent used the estate property some equipment belonging to the estate went from fully operational to requiring service. Thus the estate has suffered a loss to the extent that the equipment decreased in value because it needs servicing. Upon deposition, the respondent's appraiser stated that he decreased the value of the equipment by $1,800.00 because of its operational status. This decrease in the value is the amount by which the estate has been damaged by respondent's use of estate property.

The parties have agreed that the trustee's attorney devoted forty hours at $125.00 per hour to prosecute this motion for sanctions. The Court finds the hours expended and the hourly rate are reasonable in the circumstances of this case. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Accordingly, the estate is entitled to recover $5,000.00 in attorney fees.

■■■■ The trustee argues that compensatory damages also include lost profit and the value of the lost opportunity to reorganize. The Court finds that the estate has not been damaged because of the loss of profit. In the months that debtor was profitable those funds were paid to debtor's principal as salary and did not inure to the benefit of debtor or the estate. Although debtor's principal may have been damaged by a loss of profit, respondent's violation of the stay did not cause loss of profit to the estate.

■■■■ Similarly, the Court holds that the chapter 7 estate and the trustee were not damaged by any loss of opportunity to reorganize that may have occurred because of respondent's violation of the stay. The Court does not hold and need not address in the context of this motion whether debtor may have been damaged by any loss of the opportunity to reorganize that may have occurred because of respondent's action. The Court holds that the estate has not been so damaged and no damage award for lost opportunity to reorganize is warranted.

### Conclusion

Respondent committed a willful violation of the stay and sanctions are appropriate. Because debtor is a corporation sanctions are not available under § 362(h), however, the Court has authority to impose sanctions under 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9020. In accordance with the compensatory nature of sanctions for contempt, the Court holds that respon-

dent caused debtor $6,800.00 in actual damage from attorney fees and costs and diminution in the value of estate property. The Court will enter a separate order consistent with these findings of fact and conclusions of law.