**In re Judith MEIS–NACHTRAB, Debtor.**

**Judith MEIS–NACHTRAB, Plaintiff,**

**v.**

**Sharon GRIFFIN, Defendant.**

**Bankruptcy No. 94–31656.**
**Adv. No. 95-3038.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Dec. 18, 1995.

Gordon Barry, Toledo, Ohio, for Plaintiff.

Sharon Griffin, Toledo, Ohio, Pro Se.

**OPINION AND ORDER GRANTING DAMAGES FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY, DENYING COUNTERCLAIM AND DENYING MOTION FOR SANCTIONS PURSUANT TO FED. R.BANKR.P. 9011**

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court upon Judith Meis–Nachtrab's (the "Debtor") adversary complaint against Sharon Griffin ("Griffin"), the Debtor's former domestic relations counsel, which complaint seeks damages for Griffin's alleged willful violation of the automatic stay of 11 U.S.C. § 362 and the discharge injunction of § 524. Griffin has filed an answer and a counterclaim for her postpetition legal fees, alleging that such fees are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B). Griffin has further filed a motion under Fed.R.Bankr.P. 9011 based on the Debtor's allegedly frivolous prayer for damages in the amount of $15,-000.00. The Court finds that the Debtor's complaint is well taken and that the Debtor should be granted judgment against Griffin in the amount of $937.50 for actual damages. The Court further finds that the Debtor

should be granted $250.00 in punitive damages. Moreover, the Court finds that Griffin's counterclaim is not well taken and should be denied. Finally, Griffin's motion for sanctions under Fed.R.Bankr.P. 9011 shall be denied.

## FACTS

### Griffin's Alleged Violation of the Automatic Stay

The Debtor filed a petition under chapter 13 of title 11 on July 11, 1994 (the "Petition Date"). The Debtor scheduled her prepetition debt to Griffin in the amount of $2,596.37 as an unsecured claim (the "Prepetition Debt").

Griffin acknowledges that the Debtor informed Griffin telephonically of the filing of her chapter 13 petition prior to July 29, 1994. Griffin also acknowledges that she received formal, written notice from the Court of the Debtor's chapter 13 filing.

The Debtor testified that she contacted Griffin subsequent to the Petition Date, requesting that Griffin represent her in negotiating the settlement of a debt imposed by a prior divorce decree. The Debtor testified that she contracted to pay Griffin for postpetition services rendered as such services were incurred.

Griffin testified that she and the Debtor entered into a postpetition oral contract which required the Debtor to repay the Prepetition Debt.

Griffin sent the Debtor bills for the Prepetition Debt on July 29, 1994, October 31, 1994, November 30, 1994, December 30, 1994, January 31, 1995, February 15, 1995 and February 28, 1995. *See* Joint Exhibit A, pp. 1–7.

The Debtor made postpetition payments to Griffin on October 14, 1994, December 2, 1994 and January 1, 1995 which payments totaled $450.00.

Although Griffin performed postpetition legal services for the Debtor, the dollar amount of such services was de minimis. *See* Joint Exhibit A, at p. 2, 10/31/94 Billing Statement (indicating additional postpetition fee of $30.00); at p. 4, 12/30/94 Billing Statement (indicating additional postpetition fee of $7.50); at p. 5, 1/31/95 Billing Statement (indicating additional postpetition fee of $37.50).

### The Debtor's Alleged Damages

First, the Debtor seeks the return of the $375.00 allegedly collected in violation of the automatic stay. The Debtor calculates this amount as $450.00, the total amount collected by Griffin postpetition, less the $75.00 billed by Griffin for postpetition legal services. Second, the Debtor seeks an award of attorneys' fees in the amount of $875.00. This amount represents seven hours of legal services assertedly incurred in resolving the alleged violation of the automatic stay at a rate of $125.00 per hour. Third, the Debtor alleges that she has been damaged in the amount of $2,500.00 based on the fact that she became "stressed out", "nervous" and "nauseous" in apprehension of the instant hearing. Fourth, the Debtor seeks punitive damages in the amount of $5,000.00 against Griffin.

## DISCUSSION

### Applicable Statute:

Subsection (a) of 11 U.S.C. § 362 provides that:

[e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

... (6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title[.]

Subsection (h) of 11 U.S.C. § 362 provides that:

[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

### Burden of Proof

██ The Debtor bears the burden of proof by the preponderance of the evidence. *See In re Sielaff*, 164 B.R. 560, 571 (Bankr. W.D.Mich.1994) (applying preponderance standard); *cf. Grogan v. Garner*, 498 U.S.

279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (noting that preponderance standard generally applies in civil actions between private litigants) (citation omitted).

### Whether Griffin Willfully Violated the Automatic Stay

 The Court finds that Griffin willfully violated the automatic stay of § 362.

When a debtor files a bankruptcy petition, an automatic stay immediately arises. The scope of the stay is quite broad. It is designed to effect an immediate freeze of the status quo by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate. The automatic stay plays a vital and fundamental role in bankruptcy. The stay ensures that all claims against the debtor will be brought in a single forum, the bankruptcy court. The stay protects the debtor by allowing it breathing space and also protects creditors as a class from the possibility that one creditor will obtain payment on its claims to the detriment of all others.

*Chugach Timber Corp. v. N. Stevedoring & Handling Corp. (In re Chugach Forest Prod., Inc.),* 23 F.3d 241, 243 (9th Cir.1994) (quoting *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 585 (9th Cir. 1993)) (citations omitted); *see NLT Computer Services Corp. v. Capital Computer Systems, Inc.,* 755 F.2d 1253, 1258 (6th Cir.1985) (stating that "[t]he stay provisions of section 362 are automatic and self-operating and those who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted").

 Section 362(h) "provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional". *Goichman v. Bloom (In re Bloom),* 875 F.2d 224, 227 (9th Cir.1989) (quoting *INSLAW, Inc. v. United States (In re INSLAW, Inc.),* 83 B.R. 89, 165 (Bankr. D.D.C.1988)); *Cuffee v. Atlantic Business and Community Dev. Corp. (In re Atlantic Business and Community Corp.),* 901 F.2d

325, 329 (3rd Cir.1990) (citations omitted); *Crysen/Montenay Energy Co. v. Esselen Associates, Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1104–05 (2nd Cir. 1990); *Price v. Pediatric Academic Ass'n, Inc.,* 175 B.R. 219, 221 (S.D.Ohio 1994); *In re Herron,* 177 B.R. 866, 868 (Bankr.N.D.Ohio 1995) (citations omitted). "A 'willful violation' does not require a specific intent to violate the automatic stay." *In re Bloom,* 875 F.2d at 227 (quoting *In re INSLAW, Inc.,* 83 B.R. at 165); *In re Atlantic Business and Community Corp.,* 901 F.2d at 329 (citations omitted); *In re Crysen/Montenay Energy Co.,* 902 F.2d at 1104–05; *Ledford v. Fidelity Fin. Services (In re Hill),* 174 B.R. 949, 954 (Bankr.S.D.Ohio 1994) (citations omitted); *In re Timbs,* 178 B.R. 989, 997 (Bankr.E.D.Tenn.1994) (citation omitted); *In re Smith,* 170 B.R. at 115 (citations omitted).

Griffin had knowledge of the Debtor's chapter 13 petition. *See Constantino v. Flanders Hill Dev. (In re Constantino),* 80 B.R. 865, 868 (Bankr.N.D.Ohio 1987) (stating that a creditor "can be charged with notice if [it] w[as] in possession of sufficient facts such as would cause a reasonably prudent person to make further inquiry") (citations omitted); *see also Thacker v. Etter (In re Thacker),* 24 B.R. 835, 838 (Bankr.S.D.Ohio 1982) (stating that "[i]n order to prevail on ... a motion for civil ... contempt [for violation of § 362] the moving party need only show that the respondent was armed with sufficient facts to give a reasonable [person] constructive knowledge that the stay was in effect, and that notwithstanding such knowledge, actions were taken in violation of the stay") (footnote with citations omitted). Griffin acknowledges that the Debtor informed her of the filing of the Debtor's chapter 13 petition prior to the date of the July 29, 1994 billing statement. *See Sermersheim v. Sermersheim (In re Sermersheim),* 97 B.R. 885, 889 (Bankr.N.D.Ohio 1989) (finding telephonic notice of pendency of debtor's bankruptcy case sufficient to hold creditor in violation of § 362(h)) (citations omitted); *see also Coons v. City of Siloam Springs (In re Coons),* 123 B.R. 649, 651–52 (Bankr.N.D.Okla.1991) (finding telephonic notice of debtor's bankruptcy case sufficient to hold creditor in vio-

lation of § 362(h)). Further, Griffin acknowledges that she received formal, written notice from the Court of the Debtor's chapter 13 filing.

Moreover, Griffin's repeated postpetition billings for the Prepetition Debt plainly represented acts "to collect ... a claim against the debtor that arose before the commencement of the case" within the meaning of 11 U.S.C. § 362(a)(6).

The Court rejects Griffin's argument that her actions did not violate § 362(h) because the Debtor had previously entered into an oral contract with Griffin to repay the Prepetition Debt. *See In re Esposito*, 154 B.R. 1011 (Bankr.N.D.Ga.1993) (finding that creditor willfully violated automatic stay where creditor repossessed collateral in reliance on reaffirmation agreement which had not been approved by bankruptcy court); *cf. In re Baker*, 183 B.R. 30 (Bankr.D.R.I.1995) (finding that creditor's ex parte negotiation of reaffirmation agreement with debtor constituted willful violation of the automatic stay). As the Court in *Walker v. M & M Dodge, Inc. (In re Walker)* stated in holding a creditor in contempt for violating the discharge injunction of § 524,

> [s]ubsections (c) and (d) of section 524 prohibit enforcement of the reaffirmation agreement of a discharged debt unless the requirements of those sections have been met. Any other agreements to pay a .... dischargeable debt is without legal effect.

*Walker v. M & M Dodge, Inc. (In re Walker)*, 180 B.R. 834, 846 (Bankr.W.D.La.1995) (quoting 3 Collier on Bankruptcy, Para. 524.04).

### The Debtor's Damages

■ The Court agrees with the Debtor that Griffin has an affirmative duty to return the $375.00 collected from the Debtor in violation of the automatic stay. *In re Herron*, 177 B.R. at 868; *In re Smith*, 170 B.R. at 117 (citing *In re Sermersheim*, 97 B.R. at 888–89); *In re Dungey*, 99 B.R. 814, 816 (Bankr. S.D.Ohio 1989) (citations omitted); *In re Clark*, 60 B.R. 13, 14 (Bankr.N.D.Ohio 1986); *see also Utah State Credit Union v. Skinner (In re Skinner)*, 90 B.R. 470, 480 (D.Utah 1988) (stating that "[o]nce a creditor has

been informed of a violation of the stay, the creditor has an obligation to restore the status quo and undo his post-petition collection actions") (citation omitted); *Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 343 (9th Cir. BAP 1994) (stating that "[t]he stay requires the creditor to maintain the status quo ante and to remediate acts taken in ignorance of the stay") (citation omitted); *In re Xavier's of Beville, Inc.*, 172 B.R. 667, 671 (Bankr.M.D.Fla.1994) (stating that "the creditor has a duty to return the status quo without requiring a specific court order") (citation omitted). Indeed, Griffin's refusal to turn over the $375.00 collected in violation of the automatic stay constitutes a continuing violation of the discharge injunction of § 524(a)(2). *See* 11 U.S.C. § 524(a)(2) (enjoining the continuation of an act to "collect, recover or offset" a prepetition debt); *cf. In re Braun*, 152 B.R. 466, 470–71 (N.D.Ohio 1993) (finding that creditor's postpetition actions to collect discharged debt constituted violation of the discharge injunction of § 524(a)(2)).

■ Further, the Court finds that the Debtor is entitled to an award of attorneys' fees in the amount of $562.50. *See* 11 U.S.C. § 362(h) (providing that a party "injured by any willful violation of a stay provided by [§ 362] shall recover actual damages, including ... attorneys' fees"). As the Court stated in *Price v. Pediatric Academic Ass'n, Inc.*,

> [w]here a willful violation exists, an award of damages, including attorneys' fees, is mandatory. However, the fees must be reasonable and necessary. The [c]ourt should closely scrutinize the fees requested by attorneys for unnecessary and excessive charges.

*Price*, 175 B.R. at 221 (citations omitted).

■ Despite the fact that the Debtor requested an award of attorneys' fees in her adversary complaint filed on March 8, 1995, the Debtor failed to provide any evidence as to her attorneys' fees incurred in prosecuting this adversary. Although the Debtor's counsel asserted that the Debtor incurred 7 hours in legal fees at $125.00/hr. in prosecuting the instant adversary, the Debtor did not provide

the Court with any information which would support a finding that such fees were reasonable and necessary. *Cf. In re Smith,* 170 B.R. at 117 (awarding attorneys' fees to debtor based on exhibit detailing counsel's fees). The Court nevertheless notes that the time which the Debtor's attorneys spent in appearing at two pretrial conferences, appearing to defend Griffin's motion for summary judgment and appearing at the trial in this matter approximated two hours. Additionally, an award of attorneys' fees for two hours, representing the time which Debtor's counsel spent preparing for the above-mentioned court appearances, is appropriate. Furthermore, the Court finds that the Debtor should be granted one-half hour in attorneys' fees for the time expended in filing the original adversary complaint in this matter. Therefore, the Debtor shall be awarded attorneys' fees in the amount of $562.50.

■ However, the Debtor is not entitled to damages based on the fact that she became "stressed out", "nervous" and "nauseous" in apprehension of the instant hearing. *See Archer v. Macomb County Bank,* 853 F.2d 497, 499–500 (6th Cir.1988) (stating that "a damage award must not be based on 'mere speculation, guess, or conjecture'" in finding that evidence failed to support bankruptcy court's damages award) (quoting *John E. Green Plumbing & Heating Co. v. Turner Constr. Co.,* 742 F.2d 965, 968 (6th Cir.1984), *cert. denied,* 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985)) (other citation and internal quotation marks omitted).

■ The Court further finds that Griffin's repeated billing of the Debtor on the Prepetition Debt warrants the imposition of punitive damages in the amount of $250.00. *See In re Smith,* 170 B.R. at 118 (finding that creditor's failure to return funds collected in violation of the automatic stay warranted award of $1,000.00 in punitive damages); *In re Gault,* 136 B.R. 736, 739 (Bankr.E.D.Tenn.1991) (finding punitive damages in the amount of $2,500.00 warranted where IRS served three notices of levy upon debtor despite knowledge that it was in violation of automatic stay); *In re Dungey,* 99 B.R. at 818 (finding award of $100.00 in punitive damages warranted based on credi-

tor's failure to restore wages garnished postpetition to debtor); *cf. In re Timbs,* 178 B.R. at 997–99 (finding punitive damages in the amount of $5,000.00 warranted based on collection agency's attorney's obstinate refusal to terminate prepetition garnishment action against debtor); *In re Markey,* 144 B.R. 738, 746 (Bankr.W.D.Mich.1992) (finding punitive damages in the amount of $12,500.00 warranted for attorney's repeated bad faith violations of the automatic stay including commencement of postpetition foreclosure proceeding and misrepresentations to bankruptcy court). Griffin's repeated collection actions after notice of the Debtor's chapter 13 filing constituted a reckless disregard of the automatic stay.

### Griffin's Counterclaim

■ Griffin failed to adduce any evidence in support of her counterclaim, which counterclaim was apparently brought after the time set for filing complaints to determine dischargeability. *Cf. Cub Cadet Corp. v. Rosage (In re Rosage),* 189 B.R. 73, 80–81, (Bankr.W.D.Pa.1995) (assessing sanctions under Fed.R.Bankr.P. 9011 against creditor for filing of dischargeability complaint after deadline set by court). Therefore, her counterclaim shall be denied.

### Sanctions Under Fed.R.Bankr.P. 9011

■ The Court agrees with Griffin that the assertion of a patently unjustifiable damages claim can, in certain circumstances, warrant the imposition of sanctions under Fed.R.Bankr.P. 9011. *See Hudson v. Moore Business Forms, Inc.,* 836 F.2d 1156, 1162 (9th Cir.1987) (finding that the "absence of any reasonable support for [4.2 million damage claim] and the nature of the justification offered" supported conclusion that defendant filed counterclaim to harrass plaintiff); *cf. Thomas v. Yonkers Police Dep't, Transp. Unit, Westchester Cty. Dep't of Corrections,* 147 F.R.D. 77, 81–82 (S.D.N.Y.1993) (noting that large prayer for damages based on desire to gain publicity or coerce settlement may be sanctionable) (citations omitted). Nonetheless, Griffin failed to adduce sufficient evidence to support her assertion that the Debtor's $15,000.00 prayer for damages

violated Fed.R.Bankr.P. 9011. *See Mihalik v. Pro Arts, Inc.,* 851 F.2d 790, 793–94 (6th Cir.1988) (finding that party's inaccurate prediction as to how court would resolve case did not warrant Rule 11 sanctions).

Lastly, the court raises, on its own motion, the issue of whether Debtor's counsel should be held in violation of Fed.R.Bankr.P. 9011 for his failure to cite recent authority from this Court and from the District Court in his pretrial briefs. *See* Fed.R.Bankr.P. 9011(a) (stating, in pertinent part, that "the signature of an attorney ... constitutes a certificate [that the document filed by the attorney] is not interposed for any improper purpose, such as to ... cause unnecessary delay or needless increase in the cost of litigation"). Counsel for Debtor's pretrial briefs failed to cite recent decisions of this Court and the District Court in which counsel for Debtor had participated. These decisions addressed many of the issues raised in the instant adversary. *See Smith v. GTE North Inc. (In re Smith),* 170 B.R. 111 (Bankr.N.D.Ohio 1994); *In re Braun,* 141 B.R. 133 (Bankr.N.D.Ohio 1992), *mot'n amend den'd,* 141 B.R. 144 (Bankr.N.D.Ohio 1992), *aff'd in part, rev'd in part,* 152 B.R. 466 (N.D.Ohio 1993). Counsel for Debtor might have decreased the cost of the instant litigation and obviated the need for a trial if he had apprised Griffin of this authority. Nevertheless, the Court finds that Debtor's counsel did not violate Fed.R.Bankr.P. 9011. The Court further notes that Griffin, as an attorney, bears an obligation to conduct her own legal research.

In light of the foregoing, it is therefore

ORDERED that the Debtor be, and she hereby is, granted judgment in the amount of $1,187.50 against Griffin. It is further

ORDERED that Griffin's counterclaim be, and it hereby is, denied. It is further

ORDERED that Griffin's motion for sanctions pursuant to Fed.R.Bankr.P. 9011 be, and it hereby is, denied.