**IN RE: Mary Katherine RHODES, Debtor.**

**Case No. 6:11–bk–18257–ABB**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Signed February 3, 2017

A. Clifton Black, Orlando, FL, for Debtor.

## AMENDED ORDER IMPOSING SANCTIONS AGAINST NATIONSTAR MORTGAGE, LLC

Arthur B. Briskman, United States Bankruptcy Judge

■ The principal purpose of the Bankruptcy Code is to grant a "fresh start" to "the honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Debtor Mary Katherine Rhodes ("Debtor") is unquestionably such a debtor. Nationstar Mortgage, LLC ("Nationstar") and its inexcusable and blatant failures to abide by orders of this Court have impinged on the Debtor's fresh start. Debtor asks this Court to impose sanctions against Nationstar for its inexplicable inability to account properly for payments made pursuant to Debtor's confirmed plan and its belated release of its liens despite an explicit direction of this Court. The relief requested by Debtor is due to be granted.

### Procedure

This matter came before the Court on the Motion for Contempt (Doc. No. 164, the "Motion") filed by Debtor against Nationstar; the Order to Show Cause directed to Nationstar (Doc. No. 168, the "Order to Show Cause"); Application to Employ Richard L. Pilhorn as Accountant (Doc. No. 191); and Motions by Debtor for Attorney Fees (Doc. Nos. 176 and 186, "Motions for Attorney Fees"). The Debtor seeks sanctions against Nationstar under 11 U.S.C. § 105 for failing to comply with this Court's orders.

A trial on these matters was held on August 15, 2016, at which the parties' re-

spective counsel were present, and Debtor, Debtor's non-filing spouse Richard Rhodes ("Mr. Rhodes"), Debtor's accountant Richard Pilhorn ("Mr. Pilhorn") and Nationstar's representative Gene Mays ("Mr. Mays") provided testimony. Nationstar was provided an opportunity to file a written objection to the Motions for Attorney Fees, Debtor was provided an opportunity to file a reply, and the parties were instructed to submit proposed findings of fact and conclusions of law. The parties have filed the requested documents.

The Court makes the following findings of fact and conclusions of law after reviewing the pleadings and evidence, hearing argument, and being otherwise fully advised in the premises.

### FINDINGS OF FACT

The Debtor filed the above-captioned Chapter 13 case on December 6, 2011. (Doc. No. 1). Debtor listed real property located at 3601 Corrine Drive, Orlando, FL 32803 (the "Corrine Property") and 4417 Park Lake Street, Orlando, FL 32803 (the "Park Lake Property") (collectively the "Properties") on Bankruptcy Schedule A. (Doc. No. 1, p. 8). The Properties were titled solely in the Debtor's name and neither was her principal residence.

Nationstar held mortgages encumbering the Properties; was properly listed on Bankruptcy Schedule D. (Doc. No. 1, pp.

4–5); appeared in the case through counsel;[1] and filed two proofs of claim: (i) a claim in the amount of $300,704.15 secured by a mortgage on the Park Lake Property (Claim 3), and (ii) a claim in the amount of $184,452.59 secured by a mortgage on the Corrine Property (Claim 7). Debtor's Chapter 13 plan proposed to value the Properties and cramdown Nationstar's mortgages. (Doc. No. 5).[2]

The Debtor filed motions to value the Properties and cramdown the mortgages under Section 506 of the Bankruptcy Code as proposed by the plan. (Doc. Nos. 25 and 26).[3] Nationstar opposed the motions to value. (Doc. Nos. 28 and 41). The Court held a combined confirmation hearing and trial on the motions to value on January 30, 2013, after which it entered orders that valued the Corrine Property at $115,000 and the Park Lake Property at $95,000, bifurcated Claim 3 and Claim 7, determined the balances of the claims to be unsecured, and provided for the avoidance of the liens pursuant to 11 U.S.C. § 506(d) upon the Debtor's successful completion of the Plan and entry of a discharge. (Doc. Nos. 96 and 97).[4]

An order confirming the Debtor's Chapter 13 plan, as modified,[5] was entered on February 13, 2013 (Doc. No. 98, the "Confirmation Order"). Nationstar was provided in the Confirmation Order with payment of (i) the secured amount of Claim 3 with interest in twenty-three monthly in-

1. Nationstar was represented by separate counsel for each of its mortgages and has received CM/ECF notice of each and every filing in this case. No less than five attorneys have represented Nationstar over the course of this case.

2. Debtor separately attempted to modify the mortgages through the Court's Mortgage Modification Mediation program; however, the mediations resulted in an impasse. (Doc. Nos. 68–71, 77).

3. Debtor also filed objections to Nationstar's proof of claims for the same reasons as in the motions to value (Doc. Nos. 45 and 46). Nationstar opposed the objection to Claim 7 (Doc. No. 60). The Debtor's objections were resolved by the Court's ruling on the motions to value.

4. Debtor has now successfully completed her five-year plan and awaits her discharge.

5. Debtor's Third Amended Plan appears at document number 88.

stalments and a balloon payment of $87,001.74 in month twenty-four, (ii) the secured amount of Claim 7 with interest in twenty-three monthly instalments and a balloon payment of $109,771.69 in month twenty-four, and (iii) the unsecured balances of Claims 3 and 7 based on a pro-rata distribution with other unsecured creditors over sixty months. (Doc. No. 98).

Nationstar actively participated in the Debtor's case up to and including the combined hearing on confirmation and the trial on the motions to value. It was at all times properly served with Debtor's motions, proposed Chapter 13 plans, notices, and the Court's orders. It was at all times represented by competent counsel. It is clear Nationstar had ample notice and opportunity to object to or seek reconsideration of its treatment under the Confirmation Order. Nationstar elected not to appeal the Confirmation Order and it became final on February 27, 2013.

The Confirmation Order provided Debtor would make the balloon payments due Nationstar on November 28, 2013. The Debtor, despite her efforts, could not obtain financing for the balloon payments. Mr. Rhodes agreed to purchase the Properties in the amount necessary to make the balloon payments in order to remedy the situation. Mr. Rhodes obtained the funds to purchase the Properties by liquidating a portion of his retirement savings.

The Debtor filed a motion to sell the Properties to Mr. Rhodes and compel Nationstar to release its liens encumbering the Properties on November 1, 2013, (Doc. No. 116, the "Motion to Sell"). Nationstar had ignored requests of the closing agent for a payoff letter, which necessitated, in part, the Motion to Sell. Nationstar was served, but did not respond to the Motion to Sell, and did not appear at the hearing. An order granting the Motion to Sell and authorizing the Debtor to sell the Properties free and clear of Nationstar's liens was entered on December 3, 2013, (Doc. No. 120, the "Sale Order"). Nationstar did not appeal the Sale Order.

The following paragraphs were contained in the Sale Order:

5. The properties are described below by street address with the appropriate claim numbers for the claims filed by Nationstar, together with the required balloon redemption amounts per the terms of the confirmed Plan:

| Claim No. | Address | Balloon Redemption Amount |
|---|---|---|
| a. 3 | 4417 Park Lake Dr. Orlando, FL 32803 | $87,001.74 |
| b. 7 | 3601 Corrine St. Orlando, FL 32803 | $109,771.69 |

6. Upon payment of the sums above for the respective claims, the liens of the mortgages securing said claims shall be released and the secured portions of the claims satisfied.

The Sale Order provided Debtor an extension not to exceed 60 days to provide the balloon payments to the Chapter 13 Trustee and to conclude the sale of the Properties.

The Chapter 13 Trustee received $220,553.57, which included the balloon payments to Nationstar, in January 2014. (Debtor's Ex. 3). A Notice of Filing of Receipt of Funds and Intent to Disburse Pursuant to Order Granting Motion to Sell was filed by the Chapter 13 Trustee and served upon Nationstar and its counsel on February 4, 2014. (Doc No. 126). The Chapter 13 Trustee issued a check to Nationstar in the amount of $196,773.43 for the balloon payments (the "Check"). (Debtor's Ex. 4).

The Check was negotiated by Nationstar in February 2014. (Debtor's Ex. 4). Nationstar failed at that time to release the mortgage liens on the Properties or apply the Check funds to the amounts owed for Claims 3 and 7 as directed in the Sale Order. Nationstar did not comply with the Sale Order until May 2016. (Creditor's Exs. 1, 2, and 5).

Debtor made numerous calls[6] to Nationstar during the intervening two years requesting that it comply with the Sale Order and provide a 2014 IRS Tax Form 1098 consistent with the amounts paid to Nationstar pursuant to the Sale Order. Nationstar informed the Debtor it "couldn't do anything." Mr. Mays testified Nationstar's files did not indicate that any written responses to Debtor's numerous inquiries nor that Debtor was advised to have her bankruptcy counsel contact Nationstar in order for this matter to be resolved.

Nationstar sent the Debtor six notices regarding forced placed hazard insurance for the Properties (Debtor's Exs. 15–20), seven corrected IRS Tax Form 1098 for tax years 2012 through 2015 for the Prop-

erties (Debtor's Exs. 7–10, 12, and 13), and paid real property taxes for the Properties (Creditor's Exs. 6–8). These actions fail to recognize the Debtor was divested of title to the Properties and had paid all the sums due Nationstar in February 2014, as directed in the Confirmation and Sale Orders.

Debtor was overcome with frustration that she contacted the Office of U.S. Senator Bill Nelson in December 2015 and implored him to intercede. (Debtor's Ex. 6). Senator Nelson's office contacted Nationstar regarding the Sale Order, the hazard insurance notices and the IRS Tax Forms. Nationstar responded by letter dated December 24, 2015, stating it was still reviewing the cramdown approved by the bankruptcy court and could not apply the funds it had received until it had "investor approval."[7] The letter indicated that once Nationstar received investor approval and applied the amounts, the Debtor would receive updated IRS Tax Forms. (Debtor's Ex. 6). The letter stated Nationstar had "actively attempted to work with" the Debtor regarding her requests and that Nationstar had "identified the error" regarding the Debtor's account, but "additional research [was] required in order to complete the cramdown and appropriately update the account." (Debtor's Ex. 6).

Debtor relied on erroneous IRS Tax Form 1098s issued by Nationstar for tax years 2012, 2013 and 2014 to prepare her federal income tax returns. Debtor was required to retain and has agreed to pay Mr. Pilhorn to amend her tax returns to correct for Nationstar's errors.

---

**6.** Debtor testified that on one particular day, she called Nationstar 20 times. Mr. Mays testified Nationstar's records indicated that Debtor had repeatedly attempted to contact Nationstar.

**7.** Mr. Mays explained the letter included "form" responses. He stated that by "investor approval," Nationstar meant its right to object or appeal the Court's orders.

Debtor testified Nationstar's failure to comply with the Sale Order for two years was upsetting, affected her sleep and required hospitalization in 2014 for chest pain due to stress. Mr. Rhodes's testimony corroborated the emotional toll that the Debtor endured. Nationstar acknowledges the Debtor suffered mental and emotional anguish as a result of its "delay" in the proper application of the balloon payments and the release of the liens.

Judicial notice is taken, a Notice of Mortgage Payment Change Related to Claim 3 (the "Notice") was filed by Nationstar on February 9, 2016. The Notice, which was submitted on Official Form 410S1 and sworn under penalty of perjury, indicates Debtor's principal and interest payment on the Park Lake Property would change, effective March 1, 2016, based upon an adjustment to the interest rate on the underlying note. (Claims Register, Claim 3). Debtor's counsel promptly objected, noting the history of the case leading up to and including the payoff in February 2014. (Doc. No. 161). A preliminary hearing was set on the Debtor's objection and a notice of hearing was served upon Nationstar. (Doc. No. 162). Nationstar withdrew the Notice as "submitted in error" on March 1, 2016. (Doc. No. 163).

Debtor filed the Motion for Contempt on March 1, 2016. A preliminary hearing was scheduled for March 30, 2016. Nationstar was properly served with the Motion and Notice of Hearing, but failed to appear. (Doc. Nos. 165 and 166). The Order to Show Cause was issued on April 8, 2016, due to Nationstar's failure to appear. The Order to Show Cause directed Nationstar to appear before the Court and explain why it should not be held in contempt for failure to comply with the Sale Order and Confirmation Order.

Nationstar executed releases of the mortgage liens encumbering the Proper-

ties after being served the Order to Show Cause. (Creditor's Exs. 1 and 2). The releases were recorded in the Official Records of Orange County, Florida in May 2016. Nationstar appeared at the Show Cause hearing as directed and the matter was set for trial.

Mr. Mays testified, as of the trial, the balloon payments had been properly applied, the mortgage liens encumbering the Properties had been released, and Nationstar was in compliance with the Sale Order. He acknowledged it was not until May 2016 that Nationstar "finally got it right." Mr. Mays explained that a "problem" had occurred that delayed proper application of the balloon payments and in turn the release of the liens. He could not articulate the nature of the "problem" that had delayed compliance with the Sale Order for over two years. He emphasized the unusual nature of the facts presented.

Nationstar is well aware of this Court's practices and procedures. Nationstar has appeared in over 300 Chapter 13 cases before this Court and in the last five years has received over $24 million in disbursements from the Chapter 13 Trustee. Nationstar is well aware of the ability of a Chapter 13 debtor under the Bankruptcy Code to cramdown a mortgage in a Chapter 13 plan, as it has appeared in Chapter 13 bankruptcy cases across the nation for many years.

The Court finds Nationstar violated—without justification or excuse—the directives of this Court as stated in the Confirmation and Sale Orders. Nationstar's failures to comply timely with those orders caused Debtor to be damaged insofar as she expended time and effort in quixotic attempts to beseech Nationstar to comply, she suffered unnecessary mental and emotional distress that Nationstar largely has slighted, and she incurred substantial accountant and attorney fees in

order to vindicate her rights. Nationstar's reckless disregard for this Court's authority and Debtor's rights are shameful and necessitate punitive sanctions in order to curb such future misconduct.

The Court finds, as explained below, Debtor's compensatory damages are:

(a) $2,295 for time and effort spent seeking assistance from Nationstar;

(b) $6,750 for emotional and mental distress;

(c) $4,220 in reasonable and necessary accountant fees; and

(d) $10,662.50 in reasonable and necessary attorney fees.

Punitive damages of $25,000 are warranted against Nationstar.

## CONCLUSIONS OF LAW

■ Chapter 13 is designed specifically to protect overextended persons with regular income desiring to voluntarily repay their debts by providing financial relief through a fresh start. The fresh start is conditioned upon the Chapter 13 debtor proposing, confirming and completing a repayment plan "funded primarily from [the dedication of] future income." *In re Hoggle,* 12 F.3d 1008, 1010 (11th Cir. 1994). The Debtor utilized the Chapter 13 process for its intended purpose. The Debtor complied with the Bankruptcy Code and is entitled to receive the full benefits of the fresh start and the other protections bankruptcy affords, including a creditor's compliance with the orders of this Court.

### Civil Contempt Sanctions

■ Bankruptcy courts have statutory contempt powers deriving from section 105 of the Bankruptcy Code. *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1389 (11th Cir. 1996); *see generally In re Jove Eng'g, Inc.,* 92 F.3d 1539, 1553–54 (11th Cir. 1996) (concluding that section 105(a) provides a bankruptcy court with contempt powers distinct from its inherent powers). Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* "[T]he plain meaning of § 105(a) encompasses *any* type of order, whether injunctive, compensative, or punitive, as long as it is 'necessary or appropriate' to carry out the provisions of" the Bankruptcy Code." *In re Jove Eng'g,* 92 F.3d at 1554 (emphasis in original).

■ A party seeking civil contempt sanctions for another's violation of a court order must establish by clear and convincing evidence: "(1) the allegedly violated order was valid and lawful; (2) the order was clear, definite and unambiguous and (3) the alleged violator had the ability to comply with the order." *McGregor v. Chierico,* 206 F.3d 1378, 1383 (11th Cir. 2000). Sanctions for civil contempt must either be compensatory or designed to coerce compliance. *In re Ocean Warrior,* 835 F.3d 1310, 1317 (11th Cir. 2016).

■ Nationstar is a sophisticated creditor. It was represented by counsel, actively participated throughout the Debtor's Chapter 13 bankruptcy case, and received proper notice of all proceedings in this case. It exercised its right to object to the "cramdown" requested by Debtor and held Debtor to her proof. Nationstar choose not to appeal either the Confirmation or Sale Orders and does not contest that the orders were valid and lawful.

The Confirmation and Sale Orders were clear, definite, and unambiguous. The Confirmation Order, which incorporated the orders on the Debtor's motions to value, provided the precise amount and interest rate Nationstar would receive for the secured portions of Claims 3 and 7. The Sale Order expressly required Nationstar to re-

lease the mortgage liens encumbering the Properties upon payment of the sums stated in the Sale Order. Nationstar should have requested clarification or appeal, not unashamedly ignore this Court's orders for over two years, if it believed the Confirmation or Sale Orders inconsistent with each other, with another order of this Court, or the Bankruptcy Code.

█ Nationstar clearly had the ability to comply with the Confirmation and Sale Orders as evidenced by its compliance subsequent to the entry of the Order to Show Cause. Nationstar could not rationally explain its continued failure to comply for over two years, and its weak justifications hold no weight, particularly given the enormous burden it placed upon the Debtor.

Debtor has met her burden, with clear and convincing evidence, to establish Nationstar's "contempt" of this Court's orders. Nationstar does not suggest otherwise. Nationstar focuses its arguments on the sanctions for which Debtor may recover. (Doc. No. 206).

### Compensatory Sanctions

█ Compensatory sanctions may be imposed for actual damages incurred by a debtor as a result of a creditor's violation of a bankruptcy court order. *Green Point Credit, LLC v. McLean (In re McLean)*, 794 F.3d 1313, 1325 (11th Cir. 2015). The damages must be based on actual loss and shown with some certainty. *In re Xavier's of Beville, Inc.*, 172 B.R. 667 (Bankr. M.D. Fla 1994). "[C]ourts have relaxed this standard in cases where the fact of damage is established, but the extent and exact amount of damage is elusive." *Id.* at 672; *see also ABC–Paramount Records, Inc. v.*

*Topps Record Distrib. Co.*, 374 F.2d 455 (5th Cir. 1967) (damage amounts may be based upon reasonable inferences drawn from the evidence).

The actual damages incurred by Debtor consist of the following: (1) time and effort expended by Debtor, (2) mental and emotional distress; (3) accountant fees and (4) attorneys fees.

### Time and Effort Expended by Debtor

The Court infers that Debtor spent a minimum of 30 hours in her attempts to get Nationstar to comply with the Confirmation and Sale Orders over the course of the two years between Nationstar's receipt of the balloon payments and the filing of the Motion. Debtor credibly testified about numerous and frequent telephone calls made to Nationstar in the attempt to resolve Nationstar's failure to properly process the balloon payments and release its liens. Nationstar's letter to Senator Nelson and Mr. Mays's testimony confirm Debtor was persistent in her pursuit of Nationstar.[8] The Court credits Debtor with 1 hour per month contacting Nationstar for a total of 24 hours based on Debtor's testimony. The Court credits Debtor with 2.6 hours spent reviewing the six hazard insurance notices and the seven corrected IRS Tax Form 1098s sent by Nationstar.[9] The Debtor is credited with 2.0 hours related to contacting Senator Nelson's office and enlisting his aid. Two hours are credited to Debtor for her appearance at trial.

An appropriate hourly rate for the Debtor is $75.00. These damages total $2,295 (30.6 hours x $75/hour).

### Debtor's Mental and Emotional Distress

█ Debtor requests $15,000 for mental and emotional anguish. Compensatory

---

8. Mr. Rhodes's testimony further bolsters the Court's conclusion as he stated that Debtor persisted to contact Nationstar despite his suggestion to "let it go."

9. The Debtor is credited with 0.2 hours for each notice or tax form received.

damages may include emotional distress, provided the Debtor (1) suffers significant emotional distress, (2) clearly establishes the significant emotional distress, and (3) demonstrates a causal connection between that significant emotional distress and the contemptor's wrongful conduct. *See In re McLean*, 794 F.3d at 1325–26. Nationstar accepts that Debtor should recover for her mental and emotional anguish (Doc. Nos. 206, 68), although not to the extent sought by Debtor. Nationstar proposes $2,700, calculated at $100 per month for 27 months, as a suitable award to compensate Debtor for her mental anguish. (Doc. Nos. 206, 68).

Debtor credibly testified regarding her distress and anguish suffered as a direct result of Nationstar's failures. Mr. Rhodes's testimony corroborated Debtor's assertions. It is not seriously disputed Debtor demonstrated she suffered stress, frustration and anguish as a result of Nationstar's conduct in violation of the Court's orders. Debtor's suffering was significant as to its duration and impact. Debtor endured 27 months of unnecessary frustration and delays, as per Nationstar's calculation, before it "finally got it right" and properly processed the balloon payments and released the liens.

The Court finds sufficient evidence, in light of Nationstar's submission, to justify an award for mental and emotional anguish.[10] The Court awards Debtor $250 per month for the 27 months she needlessly suffered, and finds therefore that Debtor should recover $6,750 for her emotional and mental distress. This upward adjustment is necessary as Nationstar's meager offer of $100 per month is further indication of its failure to appreciate fully the significance of its actions and the adverse impact inflicted upon the Debtor.

## Accountant Fees

Accountant's fees are subject to the same standard of review applied to requests for attorneys fees. *In re R & B Institutional Sales, Inc.*, 65 B.R. 876 (Bankr. W.D. Pa. 1986); *In re Cumberland Bolt & Screw, Inc.*, 44 B.R. 915, 916 (Bankr. M.D. Tenn. 1984). This standard requires the Court to (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the *Johnson* factors,[11] and explain if and how they affect the award. *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874 (11th Cir. 1990).

The Court has already approved Mr. Pilhorn's requested fees of $4,220. (Doc. No. 201).[12] Nationstar took no appeal of that order. The Court nevertheless will briefly examine the issue in light of the

---

**10.** The Court treads lightly on this evidentiary record and proceeds only in light of Nationstar's willingness to concede that, in this case, an award for mental anguish is appropriate.

**11.** The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

**12.** Mr. Pilhorn agreed to charge $2,800 to prepare and file three amended federal income tax returns to correct for the erroneous mortgage interest statements issued by Nationstar. He agreed to charge $1,420 to prepare for and attend the trial. (Debtor's Ex. 28).

contention at trial that Mr. Pilhorn's fees were unreasonable.

Mr. Pilhorn is a certified public accountant and has prepared Debtor's and Mr. Rhodes's tax returns for several years. Nationstar did not challenge Mr. Pilhorn's qualifications; the Court accepts him as qualified. Mr. Pilhorn's fees appear consistent with fees charged by other certified public accountants in similar cases.

Nationstar took no issue that Mr. Pilhorn was called to testify at trial. Nationstar does not dispute the Debtor will have to amend her previously filed 2012–2014 tax returns as a result of the corrected IRS tax forms issued by Nationstar. Mr. Pilhorn testified that he had yet to begin the amended returns; Nationstar did not inquire as to what might be involved in preparing those amended returns. Mr. Pilhorn's familiarity with Debtor and Mr. Rhodes prior tax returns would likely be beneficial versus the costs associated with an accountant unfamiliar with Debtor's past returns getting up to speed.

Nationstar contends a reasonable fee for all services provided by Mr. Pilhorn is $1,000, but provides no evidence to support this contention. Accountant fees totaling $4,220 are reasonable and appropriate given the nature, extent and value of the services to be accorded the Debtor. Consideration of the *Johnson* factors does not alter the Court's conclusion.

The Debtor has incurred actual damages for accountant fees totaling $4,220 based on Nationstar's failure to comply with the Confirmation Order and Sale Order.

*Attorney's Fees and Costs*

■ The Motions for Attorney Fees seek fees totaling $13,315.00. Debtor's

counsel asserts that he has spent a total of 33.9 hours at a rate of $350.00 per hour while his paralegal spent a total of 11.6 hours at a rate of at $125.00 per hour, all related to Nationstar's failure to comply with Confirmation and Sale Orders over the course of almost three years.[13]

Nationstar does not dispute Debtor may recover attorney fees incurred. Nationstar attacks the fees claimed on two points. A portion of the attorney fees requested predate the Sale Order, or more aptly the receipt of the balloon payments, and therefore were not incurred in an attempt to have Nationstar comply with the Confirmation and Sale Orders. The fees are alleged to be excessive given the lack of complexity of the issues. Nationstar asserts that an appropriately reasonable attorney fee is $1,000.

The Court agrees the time expended prior to and including February 2014 may not be awarded as damages because they were not incurred in an attempt to have Nationstar comply with the Confirmation and Sale Orders. *See Abbott Labs. v. Unlimited Beverages, Inc.,* 218 F.3d 1238, 1242 (11th Cir. 2000) ("[A]ttorneys' fees in civil contempt proceeding are limited to those reasonably and necessarily incurred in an attempt to enforce compliance."). Nationstar could not have failed to comply with the orders until some reasonable amount of time had passed after the Check was negotiated. That could not have occurred until March 2014. Counsel's time records attached to the Motions for Attorney Fees reflect a total of 6.9 attorney hours and 1.9 paralegal hours expended before March 2014.[14] These fees, totaling $2,652.50, will be disallowed.

---

**13.** Counsel's time records reflect 0.3 attorney hours not accounted for in the fees requested. The Court treats the fee request as made.

**14.** The time records reflect a paralegal time entry of .2 hours on March 6, 2014, in which the paralegal inquired of the Chapter 13 Trustee if the Check has cleared. The Court in-

The remaining hours expended by counsel and the billable rates charged are reasonable and not excessive. Counsel's hourly rate is $350.00 and is consistent with the hourly rates of other attorneys with the same experience, reputation, and ability. Counsel's paralegal's hourly rate is $125.00 and is consistent with prevailing paralegal hourly rates. Nationstar's suggestion a reasonable fee for this matter would be $1,000, which it calculates at $500 for the 2 hour trial and $500 for the preliminary hearing, the Motion and all work performed in advance of filing the Motion, is insulting. It also belittles the diligent efforts of counsel and Debtor to resolve this matter before seeking the Court's intervention.

Attorney fees of $10,662.50 are awarded as reasonable and appropriate given the nature, extent, and value of the services performed. This award reflects total fees sought of $13,315 reduced by $2,652.50 in fees the Court has disallowed. Consideration of the *Johnson* factors does not alter the Court's conclusion. Nationstar's contention that the matter was not complex is contradicted by Mr. Mays testimony and its own filings (Doc. Nos. 206, 59). Counsel's fee is limited to $10,662.50; counsel may not receive any portion of the other damages awarded to Debtor.

### Punitive Sanctions

■■■■ Punitive sanctions "serve both as punishment for wrongful conduct *and as a deterrent of future wrongful conduct.*" *In re White*, 410 B.R. 322, 327 (Bankr. M.D. Fla. 2009) (emphasis added). Punitive sanctions may be recovered when the alleged wrongful actor acts with actual knowledge of the violation or with reckless disregard of a protected right. *In re Wallace*, No. 09–bk–594–PMG, 2011 WL 1335822, at *7–8 (Bankr. M.D. Fla. Apr. 5, 2011); *Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987); *see also In re McLean*, 794 F.3d at 1325 (stating punitive sanctions are appropriate where the wrongdoer acts with sufficient notice of the legal import of its offending actions). An award of punitive damages should consider "(1) the degree of reprehensibility of the of the violator's conduct, (2) the disparity between the harm or potential harm suffered by the [wronged party] and the punitive damages awarded, and (3) the difference between the award granted and the civil penalties imposed in similar cases." *In re Wallace*, 2011 WL 1335822, at *8 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)).

■■■■ Nationstar is a nationwide provider of home mortgages and touts itself as a recognized leader in the mortgage industry. It is capable of employing competent staff to understand and abide by bankruptcy law. Mr. Mays testified that upon his review of the Debtor's file, there "should have been a phone call." Nationstar did nothing to assist the Debtor and rectify what is, as suggested by Mr. Mays' testimony, an error readily apparent in the file until this Court issued its Order to Show Cause.

Nationstar is a sophisticated company with a sizeable amount of experience concerning bankruptcy law and procedure, and an active participant in this Court and bankruptcy courts across the nation. Nationstar knew of the Confirmation and Sale Orders and does not argue it was not bound by those orders and failed to comply timely with those orders. Nationstar's indifference and inaction constitutes a reck-

cludes this entry in the disallowed fees. The next entry in the time records does not occur

until January 10, 2015.

less disregard for the rights of the Debtor and an arrogant defiance of bankruptcy law and the authority of this Court.

The inability to comply with the Confirmation and Sale Orders for over two years despite numerous requests by the Debtor is inconceivable and reprehensible. Nationstar's failure to provide any reasonable explanation or mitigating circumstance for its clear disregard of this Court's orders or the Debtor's numerous pleas for assistance astounds and shocks the Court. The Court simply cannot condone or excuse.

Nationstar points to no defect in Debtor's compliance with the orders of this Court and the Bankruptcy Code. The Court cannot find any.[15] Debtor and her counsel made diligent efforts to resolve these matters before seeking the Court's intervention. Nationstar forced the Debtor's hand and cannot now avoid the consequences of its actions. The curtain has been drawn back, and the Court finds those behind it lacking.

Punitive sanctions are warranted against Nationstar in the amount of $25,000. Nationstar's conduct in this case is incomprehensible and appauling, and cannot be excused. Nationstar's conduct threatened the fresh start to which this "honest but unfortunate" Debtor was entitled and has earned. This punitive award is commensurate with the total of compensatory damages awarded and with other punitive awards imposed in similar cases. *Cf. Workman v. GMAC Mortgage, LLC*, 392 B.R. 189, 196–97 (Bankr. D.S.C. 2007) (imposing punitive sanctions of $13,400); *Curtis v. LaSalle Nat'l Bank (In re Curtis)*, 322 B.R. 470, 486–87 (Bankr. D. Mass. 2005) (upholding, on reconsideration, a punitive award of $30,000). Nationstar is an institutional creditor likely to be confronted with this scenario again. This punitive award should convey sufficient warning to guard against a repeat performance.

## CONCLUSION

Nationstar has flouted this Court's orders and unjustifiably infringed upon Debtor's fresh start. Compensatory and punitive sanctions are thus warranted. The Court awards Debtor the following compensatory damages: (a) $2,295 for time and effort expended and $6,750 for mental and emotional stress endured by Debtor as a result of Nationstar's actions; (b) $4,220 in reasonable and necessary accountant fees, and (c) $10,662.50 in reasonable and necessary attorney fees. Punitive damages of $25,000 shall be imposed against Nationstar.

It is therefore:

**ORDERED, ADJUDGED and DE-CREED** that Nationstar failed to comply with orders entered by this Court and an award of compensatory and punitive sanctions are warranted under 11 U.S.C. § 105; and it is further

**ORDERED, ADJUDGED and DE-CREED** that the Motion (Doc. No. 164) is **GRANTED,** and the Debtor is awarded actual damages of $13,265.00. Nationstar shall immediately pay $13,265.00 to the Debtor, whose address is 3216 Raven Road, Orlando, FL 32803; and it is further

**ORDERED, ADJUDGED and DE-CREED** that the Motions for Attorney Fees (Doc. Nos. 176 and 186) are hereby **GRANTED, in part,** and Debtor's counsel is awarded fees in the amount of $10,662.50. Counsel's fees shall be limited to this amount; counsel may not receive any portion of the other damages awarded to Debtor. Nationstar shall immediately pay $10,662.50 to the Debtor's counsel, A. Clifton Black, whose address is 126 East

---

**15.** The motions filed by the Chapter 13 Trustee to dismiss the case were all premised upon facts that directly arose from circumstances in which Debtor was placed by Nationstar's conduct.

Jefferson Street, Orlando, FL 32801; and it is further

**ORDERED, ADJUDGED and DE-CREED** that punitive sanctions of $25,000.00 shall be assessed against Nationstar. Nationstar shall immediately pay these punitive sanctions to the Debtor, whose address is 3216 Raven Road, Orlando, FL 32803; and it is further

**ORDERED, ADJUDGED and DE-CREED** that the Court retains jurisdiction over this matter to enforce the provisions of this Order and to assess whether the imposition of additional sanctions are appropriate.

A separate Judgment consistent with these findings and rulings shall be entered contemporaneously.

ORDERED.